# S. A. Gerrard Company of Philadelphia v. Tradesmens National Bank & Trust Company

*Reber, Granger & Montgomery*, for plaintiff.

*Evans, Bayard & Frick*, for defendant.

ALESSANDRONI, J., August 10, 1934.—Plaintiff brought this action in assumpsit to recover the sum of $4,000 from the defendant. The facts are not in dispute, and the claim arises from a series of transactions involving shipments to the plaintiff. The plaintiff is engaged in the business of buying, selling, and handling fruits and vegetables, and entered into an arrangement with Yaqui Fruit Company of California to handle shipments of their products. It was arranged between them that Yaqui Fruit Company would be entitled to draw against the plaintiff in a sum not exceeding $1,000 for each carload shipped, and the plaintiff arranged with its bank, United States Bank & Trust Company, to wire the Yaqui Fruit Company's bank in California guaranteeing payment of such drafts on demand. Yaqui Fruit Company thereupon shipped four carloads of peas and drew four demand drafts on the plaintiff for $1,000 each, all payable to the order of Bank of Italy National Trust & Savings Association and accompanied by diversion orders for the merchandise.

The Bank of Italy endorsed the drafts in blank and forwarded them, together with the invoices and diversion orders, to the Tradesmens National Bank & Trust Company for collection. The defendant received the drafts on the morning of December 23, 1929, and presented them for payment to United States Bank & Trust Company in New York, as previously arranged by the parties. The drafts, invoices, and diversion orders were left with United States Bank & Trust Company, which in turn delivered to Tradesmens National Bank & Trust Company its draft in the amount of $4,000 drawn on The Pennsylvania Company in the City of Philadelphia. At the time this transaction took place, United States Bank & Trust Company required and received the plaintiff's check in the sum of $4,000 drawn on the plaintiff's account in that bank. The draft was presented for payment to The Pennsylvania Company on the morning of December 24, 1929, and the payment was refused, as United States Bank & Trust Company had closed its doors. A runner employed by the defendant was sent to the plaintiff's office and requested a check for $4,000. The plaintiff refused to give him the check without first receiving its own check, and the runner then returned to the defendant bank and obtained the draft which had been delivered by United States Bank & Trust Company to the defendant.

Plaintiff asked why the defendant did not cash the draft, and the runner replied that United States Bank & Trust Company had closed and the defendant could not use the draft, but the plaintiff could use it. The plaintiff thereupon issued its check in the sum of $4,000 drawn on Corn Exchange Bank, which was duly cashed by the defendant and forwarded to its principal in California. When the check on Corn Exchange Bank was delivered to the defendant's runner, he in turn delivered to the plaintiff the draft drawn by United States Bank & Trust Company on The Pennsylvania Company, it having been endorsed without recourse by the defendant. The plaintiff was unable to cash the draft but did include it in the amount of its claim against the defunct United States Bank & Trust Company. At the time these conversations took place on December 24, 1929, with the runner, those in charge of the plaintiff's office had notice that United States Bank & Trust Company had closed its doors and suspended payment. At the conclusion of the hearing, the trial judge directed a verdict in favor of the defendant, which action of the court is made the basis of the plaintiff's motion for judgment n. o. v.

The plaintiff raises three questions of law in support of its motion for judgment n. o. v., arguing, first, that when the defendant accepted the draft on The Pennsylvania Company the plaintiff was released from any further liability; second, that the defendant was required by law to accept only cash in payment of the four drafts and had no right to accept the draft on The Pennsylvania Company; and, third, that the defendant cannot ratify the conduct of its runner, by accepting the benefits of the runner's fraudulent representations, and also disclaim responsibility for those misrepresentations. After considering carefully each of the questions raised, we are of the opinion that they should be resolved against the plaintiff.

In considering the first question, we find no hesitancy in concluding that the acceptance of the draft of United States Bank & Trust Company by the defendant did not operate as a discharge to the plaintiff of any liability. A similar case arose in Canonsburg Iron Co. v. Union National Bank of Pittsburg, 6 Atl. 574 (1886). In that case, the plaintiff was the holder of the defendant's promissory note, and on the due date of the note the defendant had sufficient funds on deposit to meet it. The defendant gave its bank a check to cover the amount due on the note in full, and its account was charged with the amount of the check. The bank thereupon gave the defendant its cashier's check. The defendant then delivered the cashier's check to the plaintiff and received its note. When the cashier's check was presented by the plaintiff to the defendant's bank, payment was refused as the bank had suspended payments. The plaintiff thereupon offered the draft to the defendant who refused to accept it. It was there held by the Supreme Court of Pennsylvania that receipt by the defendant of the cashier's check and delivery of the note to the defendant constituted only a conditional payment. In sustaining a judgment in plaintiff's favor, the Supreme Court stated: "The burden of proof was on the maker of the note to overthrow the presumption that the check was taken as a conditional payment. It was of no higher character than the note, and it certainly was not money."

The same reasoning as was applied by the Supreme Court of Pennsylvania at that early date is applicable to the facts in this case, which are practically analogous. United States Bank & Trust Company was operating as the agent of the plaintiff throughout the transaction, and in fact had delivered its bank guaranty to the California Bank at the plaintiff's request. The receipt of the draft of United States Bank & Trust Company by the defendant was only a conditional payment, therefore, and the plaintiff could not be discharged from liability until payment of the draft had been made.

The foregoing case also disposes of the plaintiff's second contention, that the defendant was under a duty to take only cash in payment of the drafts received from California. Moreover, there is no evidence of any arrangement or understanding by the bank in California and the defendant to accept only cash and no drafts in payment of the four drafts received from California. The burden of proof in this case rests upon the plaintiff, and it has not established any dereliction of duty by the defendant to its forwarding bank. In fact, it is quite possible and probable that the defendant was authorized to accept either a check or a draft, especially in view of the fact that a payment by check or a bank draft constitutes only a conditional payment. Moreover, the defendant was under no contractual obligation to the plaintiff, and the evidence fully discloses that it successfully carried out its duties as correspondent for its forwarding bank.

In addition, it clearly appears that the plaintiff received the draft of United States Bank & Trust Company from the defendant's runner with full knowledge of the fact that United States Bank & Trust Company had been closed. A good and valid consideration was received by it, and it has no ground now to complain of its own action.

The only point remaining for discussion is whether defendant is liable for the representations made by its runner. The plaintiff knew at the time that it accepted the draft of United States Bank & Trust Company on The Pennsylvania Company that United States Bank & Trust Company had closed its doors and that payment to the defendant on the draft had been refused by The Pennsylvania Company. It is obvious that a runner's duties do not include the expression of opinions by him as to the legal rights attached to mercantile documents. The runner frankly confessed that the defendant bank could not cash the draft at The Pennsylvania Company but asserted that the plaintiff could do so. This statement cannot bind the defendant. The law is firmly established that where an agent acts beyond the scope of his authority his principal cannot be estopped from setting up the lack of authority as a defense to such action. See Hottner v. Aachen & Munich Fire Ins. Co., etc., 31 Pa. Superior Ct. 461, 464, wherein the court stated: "If the insured, under such circumstances, chose to rely on the voluntary promise of the local agent as his warrant for expunging from his contract some of its important provisions and ignoring the warnings therein given against such attempts to alter or waive the terms of the writing on which his claim is founded, he placed himself in the position described by Agnew, J., in Marland v. Ins. Co., 71 Pa. 393, thus: 'If deceived or lulled into security it was not by any act of the company, but by trusting to the mere opinion of one who had no authority to bind the company by any such expression.' " See also Greene, to use, v. Lycoming Fire Ins. Co., 91 Pa. 387.

Furthermore, the statements made by the runner constituted merely an expression of opinion, which was not binding upon the plaintiff, and if the plaintiff choose to rely on those unauthorized statements he must suffer the consequent loss. In Waynesboro Mutual Fire Ins. Co. v. Conover, 98 Pa. 384, a somewhat analogous question arose, and the principal was not held to be estopped from setting forth the lack of the agent's authority.

The defendant throughout this transaction acted merely as collecting agent for the California bank and derived no personal benefit from the transaction, forwarding the proceeds of the draft as soon as collected. Moreover, if the plaintiff relies on the statements of defendant's runner as the basis of its action, it would seem that the action should have been brought in trespass rather than in assumpsit.

For the foregoing reasons, we are of the opinion that the motion for judgment n. o. v. should be overruled.

And now, to wit, August 10, 1934, the motion for judgment n. o. v. is overruled.