## Marland *et al. versus* The Royal Insurance Co.

<table>
<tr><td>71</td><td>393</td></tr>
<tr><td>159</td><td>8</td></tr>
<tr><td>71</td><td>393</td></tr>
<tr><td>26 SC</td><td>526</td></tr>
<tr><td>71</td><td>393</td></tr>
<tr><td>31 SC</td><td>464</td></tr>
</table>

1. An insurance company had a condition in their policies, that "no insurance proposed is to be considered in force until the premium is actually paid." Marland employed an insurance broker to effect an insurance; he prepared the application which was accepted by the company, who delivered him a "binding receipt," and afterwards the policy. Marland said to the broker it was not convenient to pay then, but if he was not safe he would get the money; the broker said he would be safe for thirty days; he showed Marland the policy, who asked him to keep it: the property was burned; the policy not having been delivered to Marland, nor the premium paid by him or the broker, *Held*, that the company was not liable.

2. By giving the policy and receipt to the broker, the company gave him no authority to deliver them without payment of the premium, and his agreeing to give Marland credit, created no contract with the company.

3. Payment was the consideration which gave life to the contract of insurance.

February 20th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 221, to July Term 1871.

This was an action of covenant by Edward Marland and John Haley, trading as Marland & Co., against "The Royal Insurance Company of Liverpool."

The declaration was that the defendants, on the 2d of July 1869, executed a policy of insurance to the plaintiffs, by which it was covenanted that the defendants, in consideration of the annual premium of $210 paid by the plaintiffs, would insure the plaintiffs to the extent of $6000 against fire on the machinery, stock, &c., on Broadbent's Mill in Haddington, Philadelphia. The declaration averred that they had sustained a loss of $6000 by the burning of the property insured, &c.

The cause was tried April 25th 1871, before Thayer, J. The plaintiffs called George Fite, a clerk of the defendants, who, being shown an application by John Thompson, agent of plaintiffs for the insurance declared on and a receipt, testified that the application had been accepted July 2d 1869, and the company issued their receipt, *dated* July 1st, for $210, the premium on $6000, for one

[Marland *v.* Royal Insurance Co.]

year, to John Thompson, insurance broker ; the company issued a policy dated July 2d 1869 ; the transactions were with Thompson alone until that time ; he sent the application to the company's office and the papers were sent to him ; he had dealt with the company for ten years ; was allowed commission by them ; "he would take the policies, collect the money, and bring it to the office." The business was cash ; Thompson had no account with the company ; was not charged with the premium ; the company kept no account with him ; he could return the policy at any time, if the premium were not paid ; it was delivered to him to be handed over if the premium were paid.

John Thompson, Jr., a son and clerk of Thompson, the insurance broker, testified that his father made a return to the company every month ; the receipt was given to the father when the application was accepted ; but he then paid no money ; when the policy came "my father told Mr. Haley that the company had accepted the risk ; Haley said, 'When do you want the money ?' father said, 'It will do in a couple of weeks.' The plaintiffs never paid the premium."

Haley, one of the plaintiffs, testified, that Thompson said the company had accepted the risk, and offered him "the binding receipt." I told him it was not convenient to pay then ; afterwards he got the pocliy and showed it to me, and I read it, and asked him to keep it for me until the following week ; I asked him if I was safe if I did not pay the premium at once ; he said, you are perfectly safe, if the mill should burn down this afternoon ; I told him if I was not safe I would go out and get the money ; he said, you are perfectly safe. * * * I told him I had no safe place to keep the policy ; he offered to keep it for me, and kept it ; the fire occurred three days afterwards." He testified also, that after the fire he went with Mr. Thompson to see Mr. Wood, the representative of the defendants, who asked Thompson if the plaintiffs had paid the premium ; Thompson said they had not, and Wood said, "I won't acknowledge the loss ;" Wood said if the plaintiffs had received the policy, even without having paid the premium, he would have acknowledged the loss.

The deposition of John Thompson, who was dead at the time of the trial, taken by defendants, was read by plaintiffs. He testified that the plaintiffs relied on him to have the policy made right ; "the binding receipt" had been handed to him the day the risk was accepted ; he did not pay the money to the company ; he received the policy a week afterwards, but did not give either policy or receipt to plaintiffs ; they did not pay him the premium ; the company did not authorize him to deliver the policy without the premium ; they left it to his judgment ; the policy was in his possession till after the fire ; the binding receipt is never asked for after the policy is issued ; the policy was returned to Wood after

[Marland v. Royal Insurance Co.]

the fire, in the presence of Marland, one of the plaintiffs; witness had given plaintiffs the privilege of taking the policy before the fire, whether the premium was paid or not; but after the fire he did not consider he would be justified in giving them the policy; witness told plaintiffs before the fire took place that they were perfectly safe under the policy; that he had them insured.

The binding receipt was as follows:—

"Received, this 1st day of July 1869, of Edward Marland & Co., the sum stated below, as a consideration for a policy of insurance for twelve months, from June 23d 1869, on machinery and stock of every description, contained in Broadbent's mill, on Rhodes Lane, near Haddington, Twenty-fourth Ward, Philadelphia, to be issued forthwith by the Royal Insurance Company, of Liverpool, according to an order received this day.

| | |
|---|---:|
| Premium, . . . . . . . | $210 |
| Policy, . . . . . . . . | 1 |
| | $211 |

One of the conditions of the policy was:—

"No insurance proposed to this company is to be considered in force until the premium and duty be actually paid."

On motion of the defendants, the court ordered a nonsuit.

This was assigned for error by the plaintiffs, who removed the record to the Supreme Court.

*J. M. Arundel*, for plaintiff in error.—The company could waive their express condition; the waiver may be proved by circumstances: Goit *v.* The National Protection Insurance Company, 25 Barbour 189; Boehen *v.* The Williamsburg Insurance Company, 35 New York 131; Flanders on Insurance 140. If the insured be allowed to act upon the confidence of such waiver, the insurer is estopped to deny the fulfilment of the condition: Insurance Company *v.* Slockbower, 2 Casey 199; Buckley *v.* Garrett, 11 Wright 204; Mitchell *v.* Lycoming Insurance Company, 1 P. F. Smith 402.

The delivery of the policy was a waiver: The Trustees of The First Baptist Church *v.* Brooklyn Fire Insurance Co., 19 New York 305; Sheldon *v.* The Atlantic Fire and Marine Insurance Co., 26 Id. 460; Wood *v.* Poughkeepsie Insurance Co., 32 Id. 619; Heaten *v.* Manhattan Insurance Co., 7 Rhode Island 502. A binding contract will not be allowed to fail, because the instrument which is the evidence of it is retained by the covenantor: Xenos *v.* Wickman, 13 Com. Bench N. S. 381; 1 Duer on Ins. sect. 10; Hamilton *v.* Insurance Co., 5 Barr 339; Flanders on Ins. 104–127. The contract was complete by the delivery of policy to the insurance broker and charging him with the premium: Dalzell *v.* Moor, 1 Camp. 532; Foy *v.* Bell, 3 Taunt. 493. A party who

[Marland *v.* Royal Insurance Co.]

enables another to commit a wrong is answerable for the conse-
quence: Blight *v.* Schenck, 10 Barr 293; Paschall *v.* Passmore,
3 Harris 307; Kentucky Ins. Co. *v.* Jones, 5 Porter's Ind. R. 96.

*M. P. Henry,* for defendants in error.—There was no contract
until the premium was paid: Real Estate M. F. Ins. Co. *v.* Roessle,
1 Gray 336.  The delivery of the policy was not a waiver of the
condition of prepayment: Bradley *v.* Potomac Ins. Co., 32 Md.
108.

The opinion of the court was delivered, February 26th 1872, by
AGNEW, J.—With all the desire we feel to compel a corporation
such as this to keep good faith towards those with whom it deals,
we have been unable to discover sufficient evidence in this case of
a consummated contract of insurance.  This action is in covenant,
and is founded directly upon the policy, though it is clear it never
was delivered.  This brings us at once to the question: Had
Marland & Co. entitled themselves to a delivery of the policy?
On this point the first witness of the plaintiffs testifies directly
against them.  He says the business of the company is a *cash*
business.  The receipt for the premium was held by Thompson.
The company kept no account with him.  He could return the
policy at any time if the premium was not paid.  It was delivered
to him *to be handed over if the premium was paid.*  The company
did not charge him with the premium or keep any account with
him.  Thus by their own showing, the company in handing over
the receipt and policy, gave Thompson no authority to deliver it
to them without payment of the premium.
The policy, by its own terms, declares that "No insurance
*proposed* to this company is to be considered in force until the
premium and duty are *actually* paid, and persons desirous of con-
tinuing annual insurances must make their respective payments
of the premium, and the duty thereon, on or before the commence-
ment of each succeeding year."  Having no authority to deliver
without payment of the premium, it is obvious Thompson's willing-
ness to do so, or to give credit, can create no contract with his
principals.  This is not one of those catching clauses in a policy
we so often see only to condemn, but it is a demand for prompt
payment of the only consideration which gives vitality to the con-
tract of insurance.  The premiums are the very bread upon which
the company feeds.  All its sustenance and ability to pay its losses
are drawn from this source, and the payment constitutes the only
consideration and just title of the insured to demand payment of
the loss.  What was testified, therefore, about the company's
having accepted the risk, and having delivered the receipt and
policy to Thompson, as the broker and mutual agent of the parties,
creates no contract.  Accepting the risk meant no more than a

[Marland v. Royal Insurance Co.]

willingness to make the insurance, but indicates no purpose to waive payment of the very consideration which moves the company to insure. It changes none of the terms of the policy to be issued. To make a different contract there must be evidence of the company's assent to the change, of which there is not a spark in the case. There is evidence that Thompson, who, as a broker, took many policies for the company, was in the habit of making monthly settlements with the company, and then paying over the premiums he had received during the preceding period. But the delivery of the policies to him to collect the premium and hand over the policy, necessarily postponed settlement with the company to a future period, and the fact that he, for convenience, settled monthly, does not change the character of the transaction. There is no evidence that the company treated him as their debtor and charged him with the premiums. On the contrary, the proof is that no account was kept with him, and that he had a right to return all policies not paid for. The company trusted to him to hold the policies and deliver them on receiving the premiums, and when he accounted for these premiums, took no further account of the policies on which they were paid. But this mode of dealing evidently gave him no power to make contracts on different terms, or to deliver the policies without payment in direct violation of the clause in it to the contrary. Much reliance is placed upon the testimony of the plaintiffs, especially that of Mr. Haley, that Thompson offered them the binding receipt, and when asked if they were safe, provided the premiums were not paid at once, he said they were perfectly safe if the mill should burn down that afternoon; and also when told that if not safe, they would go out and get the money, he replied they were perfectly safe and could have thirty or sixty days; that he had given them credit before, and he offered to keep the policies for them. But how can all this alter the case when Haley admits that Thompson showed him the policy, and he read it, and then asked Thompson to keep it until the following week? He knew therefore that Thompson had no authority to deliver without payment, and that the policy was worthless without it. He knew that the company required payment as a condition precedent to the insurance, and had he asked Thompson whether he had authority to waive this condition, his answer following the evidence given by themselves would have been that he had not. If deceived or lulled into security, it was not by any act of the company, but by trusting to the mere opinion of one who had no authority to bind the company by any such expression. The very question put to Thompson, whether they would be safe without payment of the premium, evinces a knowledge of the necessity of payment, and it was their folly therefore to delay making it. The true and easy explanation is, that they did not expect that a fire would take place so speedily, and thought

[Marland *v.* Royal Insurance Co.]

they would have time enough to close the business. When we turn at last to Thompson's testimony, we find that neither he nor they understood that they were entitled to the policy. He says he had given them an opportunity to take the policy before the fire, and they had not taken it, and after the fire he did not feel justified in handing it over. He also says that after the fire they did not attempt to get the policy from him, or offer any inducements, while he told them he was sorry for them, for they had no insurance, or at least he had his doubts about it. This tallies with the conduct of Wood, the actuary of the company, who, when called on by Thompson and the plaintiffs, asked Thompson if they had paid the premium, and when Thompson said "No," said then, "I won't acknowledge the loss." This was a judgment of nonsuit upon the trial, and we have been thus forced to travel through the evidence to discover any sufficient evidence of a contract to require the case to be submitted to the jury; and finding none the judgment is

Affirmed.