# Harrisburg Trust Co., Appellant, *v.* Mutual Life Insurance Co.

*Insurance—Life insurance—Waiver of first premium — Failure to pay first premium—Principal and agent—Acts of June 1, 1911, P. L. 581; July 12, 1913, P. L. 745, and May 17, 1921, P. L. 682— Statutes—Repeal—Reënactment.*

1. Where a life insurance company delivers a policy to a person who the evidence shows was its agent, with instructions not to deliver it until the first premium was paid, and the person named in the policy agrees in his application that the insurance should not be effective until such payment was made, no contract of insurance results between the parties, if the applicant dies before the premium is paid.

2. In an action on such a policy the plaintiff cannot set up a waiver by the company or its agent of the payment of the first premium, inasmuch as such a waiver would be a violation of the Act of July 12, 1913, P. L. 745, which prohibits the giving of any special inducement which is not specified in the policy to any applicant for insurance.

3. While the Act of June 1, 1911, P. L. 581, was repealed by the Act of May 17, 1921, P. L. 682, the latter act in section 410, reëstablished the provisions relating to the payment of the first premium.

4. Although the Act of July 12, 1913, P. L. 745, was in part repealed by the Act of May 17, 1921, P. L. 682, the latter act made no substantial change in the law relating to illegal preferences and rebates.

Argued May 21, 1923. Appeal, No. 11, May T., 1923, by plaintiff, from judgment of C. P. Dauphin Co., Sept. T., 1920, No. 1009, for defendant on the entire record, in case of Harrisburg Trust Company, administrator of the estate of James Magee, 2d., deceased, v. Mutual Life Insurance Co. of New York. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on policy of life insurance.   Before HAR-GEST, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on entire record after disagreement by jury.   Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*Spencer G. Nauman* and *J. E. B. Cunningham,* for appellant.—Under the pleadings and evidence the case should have been submitted to a jury: Derrick v. Electric Co., 268 Pa. 126.

The question whether Wickersham was the agent of Magee in procuring the insurance was a matter for the jury: Bradican v. Ry., 260 Pa. 555; Travelers Ins. Co. v. Thorne, 180 Fed. 82; Monast v. Ins. Co., 79 Atl. 932; Mut. Life Ins. Co. v. Thompson, 86 N. E. R. 503.

Whether there was an absolute delivery of the policy and a waiver of the prepayment of the initial premium was a question of fact for the jury: Snyder v. Ins. Co., 202 Pa. 161; Ellis v. Anderson, 49 Pa. Superior Ct. 245; Arthurholt v. Ins. Co., 159 Pa. 1.

The waiver of the prepayment of the first premium was not a violation of the Act of July 12, 1913, P. L. 745, and did not invalidate the contract of insurance: Snyder v. Ins. Co., 202 Pa. 161; Ellis v. Anderson, 49 Pa. Superior Ct. 245; Curran v. Ins. Co., 251 Pa. 420; Ætna L. Ins. Co. v. Clark, 62 Pa. Superior Ct. 528.

*A. G. Dickson* and *Berne H. Evans,* for appellee.—The policy was in violation of the Act of July 12, 1913, P. L. 745, and therefore judgment was properly entered for defendant: Ellis v. Anderson, 49 Pa. Superior Ct. 245; Landy v. Ins. Co., 78 Pa. Superior Ct. 47.

The minds of the parties never having met, nor the premium paid nor the policy delivered, there was no contract of insurance, and judgment was proper for defendant: Reed v. Ins. Co.. 50 Pa. Superior Ct. 384.

OPINION BY MR. JUSTICE SCHAFFER, June 23, 1923:

W. N. Wickersham was a life insurance agent representing the State Mutual Life Insurance Company and had placed a policy in that company on the life of James Magee, who was desirous of procuring additional insurance, and on Wickersham's representation that he could obtain it in other companies, authorized him to do so. Wickersham opened negotiations with Dickey, general agent of the defendant company, and as a result the policy in suit for $50,000 was issued.

To be enabled to share in the premium to be paid, Wickersham signed an application to become an agent for the defendant company and was so appointed by Dickey. Owing to delay in forwarding his application and appointment to the state insurance department, he did not receive his license to act as such until after Magee's death. It was arranged between Dickey and Wickersham that the latter should receive either 50% or 70% of the first premium depending upon circumstances not necessary to detail. Magee, after signing the application for the insurance, on August 14, 1919, left his home on a trip to the Pacific Coast. The policy is dated September 11th.

On receipt of the policy from the company, Dickey turned it over to Wickersham as their agent, accompanied by the statement to him in writing, so Dickey testified, that it was handed to him for delivery and collection and that it must not be delivered unless the insured was in good health. Wickersham denies that he received such instructions and that he was the agent of defendant, but asserts he was the representative of Magee and received the policy in his behalf; he admits, however, that when Dickey handed it to him, the former said, "There you are, get the check." Wickersham had not heard anything from Magee from the time the latter left home on August 14th, except as to the probable date of his return. He said that after receiving the policy, he put it in his, Wickersham's, desk and left it there await-

ing Magee's arrival; with the policy still in his possession, he learned of Magee's death and notified the latter's business manager of the fact that he had the policy and received a check from him for the amount of the first premium, from which he, Wickersham, deducted one-half and remitted the other half to Dickey in payment, as he stated, of "net premium," which was refused, and the check returned.

The company, having been called on for payment of the policy, refused to honor the demand on the grounds that the first premium had not been paid and the policy had not been delivered, whereupon this suit was brought by Magee's administrator, based on the allegations that the payment of the premium had been waived by the company, and the policy had been unconditionally delivered to Wickersham as agent for Magee. On the trial of the issue, the jury disagreed, and, upon motion of the defendant, it having submitted a point for binding instructions at the close of the testimony, the learned president judge of the court below, under warrant of the Act of April 20, 1911, P. L. 70, entered judgment for defendant, on the ground that a waiver of payment of the first premium, was in violation of the Act of July 12, 1913, P. L. 745. From this judgment plaintiff appeals.

In his application for the policy, made part of the contract of insurance, Magee had stipulated, "The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health."

The first premium not having been paid, plaintiff could not set up a claim to recovery on the basis of a delivery of the policy and an allegation that payment had been waived by the company. Appellant produces to us no evidence of a waiver unless it is embodied in what took place between Dickey and Wickersham when the latter received the policy. Wickersham testified to nothing said

at that time about a waiver of payment of the premium; quite to the contrary, he said that when the policy was handed to him by Dickey it was with directions to "get the check." However he be regarded, whether as the agent of the company, or of Magee, Wickersham received the policy, charged with the condition to deliver it only on receipt of the premium, and, as this condition was not performed, there was no delivery. That Wickersham himself understood he was not to deliver until he received the premium is borne out by the fact that he held on to the policy awaiting Magee's return, very probably to see that the other condition of delivery, that Magee was in good health at that time, was met. That Wickersham did not construe what had taken place between him and Dickey as a waiver of payment of the premium is shown by the fact that he endeavored to pay it after Magee's death. If payment had been waived, there was no occasion for this sudden remittance; and the deduction of the amount due for the premium would have been made at the time the policy was paid.

It is not necessary now to decide whether an insurance company can waive the requirement that the first premium shall be paid, in view of the declared policy of the State (evidenced by the Act of June 1, 1911, P. L. 581) that it must be paid in order to make the policy effective. That act provides, page 591, section 25, "Nor shall any such policy, except policies of industrial insurance, where the premiums are payable monthly or oftener, be issued or delivered unless it contains in substance the following provision: 'First.—A provision that all premiums shall be payable in advance, either at the home office of the company or to an agent of the company, upon delivery of a receipt signed by one or more of the officers of the company, who shall be named in the policy.'" In any event, it is only in those cases where there has been an unconditional delivery of the policy that it becomes effective without payment of the first premium. "Where the contract is otherwise complete, *an unconditional de-*

*livery of the policy* operates as a waiver of the repayment of the premium, notwithstanding an express provision therein that the company shall not be liable until the premium is actually paid": Joyce on Insurance, section 79.

Our own rule does not go as far as the textbook authority just quoted. In Marland v. Royal Ins. Co., 71 Pa. 393, it was held that by giving the policy and receipt to an insurance broker, the company gave him no authority to deliver them without payment of the premium. What was said in that case, page 396, is most applicable to the one confronting us: "It [the policy] was delivered to him [the broker] to be handed over if the premium was paid. The company did not charge him with the premium or keep any account with him. Thus, by their own showing, the company in handing over the receipt and policy, gave Thompson no authority to deliver it to them [the applicants for insurance] without payment of the premium. The policy, by its own terms declared that 'No insurance proposed to this company is to be considered in force until the premium and duty are actually paid......' Having no authority to deliver without payment of the premium, it is obvious Thompson's willingness to do so, or to give credit, can create no contract with his principals......What was testified, therefore, about the company's having accepted the risk, and having delivered the receipt and policy to Thompson, as the broker and mutual agent of the parties, creates no contract."

The conclusion forces itself upon our minds that in receiving the policy charged with the duty of obtaining the premium, Wickersham was regarded by Dickey as the agent of the company and he had the right to so regard him, because Wickersham had signed the application to be an agent and had been appointed by Dickey, notwithstanding the fact that the formal license from the insurance department had not been issued to him. To hold otherwise, would necessitate the conclusion that

Dickey and Wickersham were conniving through the subterfuge of a pseudo agency to evade the provisions of the Act of July 12, 1913, P. L. 745, which provides in its first section: "That no insurance company......by itself or any other party, and no insurance agent, solicitor, or broker, personally or by any other party, shall offer, promise, allow, give set-off, or pay, directly or indirectly, any rebate of, or part of the premium payable on the policy, or on any policy or agent's commission thereon,......or other benefit founded, arising, accruing or to accrue thereon or therefrom,......or any paid employment or contract for services of any kind, or any other valuable consideration or inducement, to or for insurance on any risk in this Commonwealth, now or hereafter to be written, which is not specified in the policy contract of insurance;......Provided, That nothing in this section shall be construed to prevent the taking of a bona fide obligation, with legal interest, in payment of any premium," with a further provision making a violation of the section a misdemeanor, subject to fine and imprisonment. The second section provides: "No insured, person or party, or applicant for insurance, shall, directly or indirectly, receive or accept, or agree to receive or accept, any rebate of premium, or of any part thereof, or all or any part of any agent's, solicitor's, or broker's commission thereon, *or any favor or advantage,* or share in any benefit to accrue under any policy of insurance, or any valuable consideration or inducement, other than such as are specified in the policy." A violation of this section is also made a misdemeanor, subject to fine and imprisonment. As was said by Judge LINN, speaking for the Superior Court in Landy v. Phila. Life Ins. Co., 78 Pa. Superior Ct. 47, 54, in which the act was being considered: "The contention that the policy though carried away by the agent, was nevertheless in force from its date, could not be maintained because section 1 of the Act of July 12, 1913, P. L. 745, in effect at the time, prohibited an agent from giving any inducement to

insurance or in connection therewith, which is not specified in the policy, to any party or applicant for insurance; and section 2 likewise made it a misdemeanor for such party to accept or agree to accept such favor. In that view of her contention, appellant could not recover, because, to show payment of the premium—a payment necessary to make the contract effective—she must disclose and base her right to recover upon a transaction in which her conduct and the agent's are both expressly prohibited; the law will not aid her in such case."

While the Act of June 1, 1911, P. L. 581, was repealed by that of May 17, 1921, P. L. 682, the latter reëstablished the provisions with which we have been dealing in section 410, and although the Act of July 12, 1913, P. L. 745, was in part repealed by the same Act of 1921, it makes no substantial change in the law; this later legislation does not apply in the present case.

The receipt of the policy by Wickersham was for the purpose of delivering it to Magee, if he paid the premium, and was in good health—payment not having been made, there was no contract of insurance entered into between the parties.

The judgment is affirmed.