HARRY BERNBLUM v. TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, APPELLANT.—105 S. W. (2d) 941.

Court en Banc, June 5, 1937.

1218

*Davis & Davis* and *Mosman, Rogers, Bell & Buzard* for appellant.

*McVey, Randolph, Smithson & Garrity, Paul R. Byrum* and *Chapman & Chapman* for respondent.

HYDE, C.—This is a suit on an accident insurance policy. Plaintiff is the assignee of the beneficiary thereof and sued for the benefits therein payable for the death of the insured and hospital and medical expenses as well. Plaintiff had a verdict for $7584, and defendant has appealed from the judgment entered thereon.

The policy sued on stated that defendant "does hereby insure James S. Glassco . . . against loss resulting from bodily injuries . . . through accidental means;" that "this policy is issued in consideration of the premium of Ten and No/00 Dollars, for the term of three months to commence on the 29th day of November, 1930;" that "this policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance;" that "no agent has authority to change this policy or to waive any of its provisions;" and that "no change in this policy shall be valid unless approved by an executive officer of the company and such approval indorsed hereon." When Glassco received this policy from the defendant's agent he signed a receipt (which the trial court refused to receive in evidence) which is as follows:

"Policy Inspection Receipt

"Accident Department. November 29, 1930.

"Received from J. E. Kornfeld, agent of the Travelers Insurance Company, Hartford, Connecticut, Policy No. R-I-38518 for inspection only. This policy shall not take effect or be in any way binding upon the Company unless nor until the premium therefor is actually paid and this receipt is surrendered while I am in good health and free from injury, nor in any event unless paid within sixty days of the date of the policy.

"James S. Glassco."

It was admitted that Glassco had signed this receipt and had never paid the premium. (His father tendered it after his death.)

Defendant's agent took Glassco's application with the understanding that he would not have to pay for the policy, to be written, but that he could submit it to his father to approve or reject. He testified:

"When I delivered the policy to Mr. Glassco he said that since he was in the employ of his father he would have to pay the premium. . . . There was an arrangement which I could permit him to have 60 days in which to make up his mind as to whether he wanted it or not and that arrangement, was made. . . . I told Mr. Glassco that under the circumstances inasmuch as he was going to have to present the policy to his father for inspection, he being the one that was going to have to pay the premium, I would have to expect him to sign this inspection receipt. (Ordered stricken out by trial court.) . . . (About 30 days later the agent saw Glassco again.) I had settled up with the Travelers Insurance Company and I informed him that they were expecting me to make some disposition at once of all items outstanding. I was attempting to determine just what his intentions were and asked him as a favor to myself to return the policy and allow me to rewrite the policy with the Federal Life, which Company I signed a contract with on the date I settled up

with the Travelers Insurance Company. . . . He said . . . 'You'll be downtown in the next day or two, stop in the office and I'll just hand it over to you.' " (This conversation was about the 30th of December, 1930, and Glassco died from injuries received on January 1, 1931.)

Offers of proof were made to show in more detail the conversations between the agent and Glassco, concerning the application for and receipt of the policy. Most of these offers were first refused but some of the matters sought to be shown were afterwards admitted, so that the agent's version can be understood to be that he took the receipt because Glassco would not agree to accept the policy or to pay for it, but was to have his father decide the question, and that he thereafter definitely rejected it. The trial court's theory was "that any evidence tending to explain the contents of the inspection receipt or any testimony concerning it should be excluded but that any testimony as to the delivery is admissible." Plaintiff's objections to the agent's testimony were based both on Section 1723, Revised Statutes 1929, and Section 5729, Revised Statutes 1929. The inspection receipt was excluded upon the theory that it violated the latter section.

 Plaintiff's theory of recovery, submitted by his instruction, was that the policy became effective because the company delivered it unconditionally to Glassco on credit; that is, agreed to give him time to pay for it. Plaintiff could only make a case on that theory by excluding from consideration the inspection receipt which conclusively showed no delivery on credit or otherwise at the time Glassco actually took possession of it. The fact that the agent sent Glassco a bill dated December 1, 1930, for the premium, when the application was taken on November 28th and both policy and inspection receipt were dated November 29th, would be some evidence of a credit arrangement; as would also be true of the fact that Glassco had the company's identification card. (stating he was insured) in his pocket when he was injured. The agent said the bill was handed to Glassco with the policy but that was for the jury. The provision in the receipt, requiring its surrender, could not be permitted to defeat either a payment of the premium or a *subsequent* agreement for credit. Therefore, a case on the policy might be made on the theory that a credit arrangement was made *after* the inspection receipt was signed, but we rule that self-serving declarations of Glassco that "they had extended him credit until the latter part of January" was not competent evidence thereof. [Lanphere v. Affeld (Mo.), 99 S. W. (2d) 36; Bland v. Buoy, 335 Mo. 967, 74 S. W. (2d) 612; Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076.] However, plaintiff's main instruction was not sufficient to submit that theory because it required no finding that Glassco ever agreed to pay the premium, which

would be essential to an agreement for credit, and the agent's positive testimony was that Glassco never did agree to pay for the policy, but finally rejected it. ▌ An acceptance of an offer to allow credit, if one was made, is as essential to make a valid agreement for credit, to change a conditional delivery of an insurance policy to an unconditional delivery, as it is to make any other contract. Such an acceptance could not be merely a mental act or state of mind, as contended by plaintiff, but would require a promise to pay made known in some manner to defendant. [Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d) 571.] The instruction did hypothesize that Glassco "received said policy and accepted the same," but defendant's evidence shows that it was a conditional acceptance, and without a further positive requirement to find that Glassco at some time either paid or agreed to pay the premium these findings could not, under this evidence, authorize recovery.

▌ Plaintiff's position seems to be that conditional delivery would be a defense but that the inspection receipt is not admissible to prove conditional delivery because of Section 5729, Revised Statutes 1929. Plaintiff relies on the italicized portion of this section, which is as follows:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectations of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; *nor shall any such company, or agent thereof, make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon;* nor shall any such company, or any officer, agent, solicitor or representative thereof pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any paid employment or contract for services of any kind, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance; or give, sell or purchase, or offer to give, sell or purchase, as inducement to insurance or in connection therewith, any stocks, bonds or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits to accrue thereon, or anything of value whatsoever: *Provided, that the provisions of this section shall also apply to all companies incorporated under the provisions of Articles 4 and 5, Chapter 37,* R. S. 1929. [R. S. 1919, sec. 6139, Amended, Laws 1925, p. 273.]"

The Amendment of 1925 made this section apply to the insurance on the stipulated premium plan and the industrial and prudential insurance provided for in the two articles mentioned. This section was enacted in 1907 (Laws 1907, p. 316) as a part of an act entitled "AN ACT to amend Article 2 of Chapter 119 of the Revised Statutes of Missouri, 1899, by adding a new section thereto, to. be known as Section 7900a, *prohibiting discrimination* by life insurance companies and associations, and providing penalties for violation thereof." (Our italics.) The act also contained a provision, now Section 5730, Revised Statutes 1929, barring any company, violating this law, from doing business in this State for a period of five years, and making its violation by an agent a misdemeanor punishable by a fine of "not less than fifty nor more than five hundred dollars . . . or imprisonment in the county or city jail for not less than thirty days, nor more than six months, or by both such fine and imprisonment." Can it be reasonably contended that defendant's agent violated this penal statute by taking an inspection receipt to show that there was no insurance at all intended until Glassco accepted the policy and paid for it? Certainly an agreement to put insurance in effect, without Glassco either paying or agreeing to pay anything for it, would directly violate it. Could such an agreement for a conditional delivery made with Glassco by the agent be a misdemeanor under the statute for which the agent could be sent to jail? Considering the same kind of inspection receipt in connection with a Texas statute "to the effect that the application and policy shall constitute the entire contract between the parties," the United States Court of Appeals of the Fifth Circuit said: "These provisions control in construing and applying a valid contract, but they do not control the effort to show that no contract ever came into being." [Harris v. Travelers Ins. Co., 80 Fed. (2d) 127.] Conditional delivery showing that no contract was in fact made is a good defense and was available to defendant here. [State ex rel. Equitable Life Assurance Soc. v. Robertson (Mo.), 191 S. W. 989; Missouri State Life Ins. Co. v. Salisbury, 279 Mo. 40, 213 S. W. 786; Lafferty v. Kansas City Casualty Co., 287 Mo. 555, 229 S. W. 750; Dayton v. Travelers Ins. Co., 303 Mo. 1, 259 S. W. 448; Eaton v. New York Life Ins. Co., 95 A. L. R. 462, note.]

Clearly, Section 5729 refers to discriminatory practices such as rebates or preferential treatment either as to cost of the policy or as to the benefits allowed for the premium, and its intent is to require that all policyholders, who can be classified alike, will pay alike, and will be treated alike. There is nothing in the title of the act about conditional delivery, about what may constitute an acceptance of a policy, or about anything except *discrimination* and penalties therefor. If the Legislature had put anything else in it, under that title, it would have been invalid under Section 28, Article 4, of our Constitu-

tion. Clearly the italicized clause of Section 5729 means (as do the policy provisions hereinabove set out) that the whole contract of insurance must be found in the policy issued and that no other agreement *concerning the terms* of such contract can be made or permitted to have any effect whatever. Clearly it has nothing to do with negotiations, before a contract of insurance is entered into, as to *when* such a contract shall be made. We hold that the inspection receipt is admissible to show that no contract of insurance was made.

■ Because of the view taken by the trial court, defendant's agent was not permitted to testify fully concerning the negotiations he claimed were had with Glassco for a conditional delivery of the policy by defendant Insurance Company. The competency of an agent of a party to a cause of action as a witness under Section 1723, Revised Statute 1929, is fully discussed and the conclusions of this court stated in Freeman v. Berberich, 332 Mo. 831, l. c. 845-847, 60 S. W. (2d) 393, l. c. 400, as follows:

"The most diversity of opinion seems to have arisen. in cases involving the competency of agents who have dealt with a deceased person. In Stanton v. Ryan, 41 Mo. 510, it was held that the defendant's wife, who made a contract as his agent, was competent, although the other party to the contract was dead. On the other hand, in Banking House v. Rood, 132 Mo. 256, 33 S. W. 816, it was held that an agent of the bank could not testify about a transaction, in which a note to it was taken, in a suit by the corporation to enforce the note, where the maker of the note was dead. Again, in Clark v. Thias, 173 Mo. 628, 73 S. W. 616, this court reached the opposite conclusion. There are other cases in this court and in the Courts of Appeal which have followed each of these contradictory holdings. However, in Wagner v. Binder (Mo.), 187 S. W. 1128, l. c. 1158, Banking House v. Rood was expressly overruled. The Wagner case was a tort action based on fraudulent representations made to the plaintiff's agent by a deceased, against whose estate it was sought to recover damages. This court held that the agent could testify to these representations. This court said: 'The statute is satisfied when death silences the mouth of one of the parties and the courts close the lips of the other without going further and destroying competent testimony showing the liability of the deceased party.' The court further said that it was not the purpose of the statute to disqualify a witness who was competent at common law and that agents were competent witnesses, even under the common-law rule of disqualification for interest, as to what they did within the scope of their employment. [See 1 Greenleaf on Evidence, secs. 411 and 416; see, also, Hanley v. Blanton, 1 Mo. 49; Stothard v. Aull, 7 Mo. 318; Burd v. Ross, 15 Mo. 254.] But the court recognized that, although the death of the defendant does not exclude the contracting

agent, the converse of the proposition was not true; but that the death of the contracting agent does exclude the surviving party who contracted with him. [Williams v. Edwards, 94 Mo. 447, 7 S. W. 429; Leach v. McFadden, 110 Mo. 584, 19 S. W. 947; Hollmann v. Lange, 143 Mo. 100, 44 S. W. 752; Wendover v. Baker, 121 Mo. 273, 25 S. W. 918; Sidway v. Missouri Land & Live Stock Co., 163 Mo. 342, 63 S. W. 705; Central Bank v. Thayer, 184 Mo. 61, 82 S. W. 142; Charles Green Real Estate Co. v. Building Co., 196 Mo. 358, 93 S. W. 1111.] The holding of the Wagner case that the plaintiff's agent was not disqualified by the death of the defendant with whom the agent dealt has since been followed by this court. [Allen v. Jessup (Mo.), 192 S. W. 720; Orthwein v. Nolker, 290 Mo. 284, 234 S. W. 787; Darby v. Northwestern Mutual Life Ins. Co., 293 Mo. 1, 239 S. W. 68; Curtis v. Alexander (Mo.), 257 S. W. 432; and Allen Estate Assn. v. Boeke, 300 Mo. 575, 254 S. W. 858, approving the Wagner case; also 21 A. L. R. 928, and 54 A. L. R. 264, for notes discussing Missouri decisions. Other cases approving Wagner v. Binder are Signaigo v. Signaigo (Mo. banc), 205 S. W. 23; Rauch v. Metz (Mo. banc), 212 S. W. 353; O'Neil v. Stratton (C. C. A.), 64 Fed. (2d) 911; Maryland Casualty Co. v. Cook-O'Brien Const. Co. (C. C. A.), 69 Fed. (2d) 468; see, also, 11 Law Series M. U. Bulletin 60 for a discussion of earlier cases.]

"The distinction between these two lines of cases, however, may be explained as follows:

"First.—In the Wagner case and those which follow it, it is held that the agent of a party is not disqualified, because such agents were not disqualified under the exception to the interest rule recognized at common law.

"Second.—In the other cases, following Williams v. Edwards, which hold that the death of the contracting agent excludes the surviving party who contracted with him, it is not the contracting agent who is being disqualified as a witness, for he is the one who is dead, and therefore there is no conflict with the common-law rule that agents are competent witnesses whether the principals are living or dead. It is the other party to the contract or cause of action, who is being disqualified by the contracting agent's death, and not the agent.

"Third.—The result of holding that the original party to the contract, within the meaning of the statute, whose death disqualifies the other party, is the person (contracting agent) who negotiated the contract, rather than the person in whose interest it is made, necessarily makes the death of that agent disqualify the original party, who contracted with him and *who was disqualified at common law* because of his interest as a party; but the death of an original party does not necessarily require the disqualification of the contracting

agent (of the other party), *who was a competent witness at common law* and is not specifically disqualified by the statute."

This distinction is based on the theory that the statute was intended to be a qualifying and not a disqualifying statute, except where it adds a new specific disqualification of its own. There would be no doubt about this matter, because both divisions of this court have followed Wagner v. Binder, supra, in the decisions, above cited, except for the fact that the court en banc in Lawhon v. St. Joseph Veterinary Laboratories (Mo.), 252 S. W. 44, ignored it, and followed the case overruled by it. In that case, a wrongful death action, this court said: "Dr. Frederick W. Holkenbrink (vice-president of the defendant corporation and its general manager) was incompetent to testify to the arrangement he made with Lawhon (who was deceased and for whose wrongful death the suit was brought) for digging the sewer. (This testimony dealt largely with an agreement which it was contended made Lawhon an independent contractor.) Notwithstanding, he was acting for defendant, he was 'one of the original parties to the contract . . . in issue and on trial' under the statute as we have construed it. [Banking House v. Rood, 132 Mo. 256, 262, 33 S. W. 816.]" This court further said that Will Holkenbrink (brother of Dr. Holkenbrink and acting manager of the corporation in his absence) was competent "to testify as to the transaction between Dr. Holkenbrink and Lawhon as he was in no way a party to it," but held that "he was not competent to testify to conversations or transactions which he, as defendant's acting manager, had with Lawhon with respect to the prosecution of the work." Thus the court en banc, in the Lawhon case, went back to and applied the rule of Banking House v. Rood without mentioning Wagner v. Binder which had expressly overruled it. [For discussion of this situation see 10 St. Louis Law Review 101; see, also, attempt made to find a basis for distinguishing the Lawhon case from Wagner v. Binder and the cases following it, in Gerkey v. Hampe (Mo. App.), 274 S. W. 510.] Moreover, under the rule of a later case en banc, State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51, Lawhon, for whose death his wife brought the suit, was not "one of the original parties to the . . . cause of action in issue and on trial" because as this court there held he "could not be a party to a suit to recover a penalty for (his) own death," which was a new cause of action created by statute for his wife. Of course, no contract to which he was a party was sued on or sought to be enforced in an action for damages for his death. Therefore, the disqualification of the witnesses made in the Lawhon case would not now be made for the reasons stated in State ex rel. Thomas v. Daues. However, since the case stands as a precedent for reestablishing the rule of Banking House v. Rood, instead of following Wagner

1228

v. Binder and the decisions of both divisions following it, the Lawhon case should be overruled on this point.

 Since this case may be retried, we rule that neither the beneficiary nor her assignee can recover medical and hospital expenses, under the policy provisions that "indemnity for loss of life of the insured is payable to the beneficiary if surviving the insured, and otherwise to the estate of the insured;" and that "all other indemnities of this Policy are payable to the insured." [Martin v. Travelers Ins. Co. (Mo. App.), 247 S. W. 1024, l. c. 1030; see, also, Id., 310 Mo. 411, 276 S. W. 381.]

The judgment is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion by HYDE, C., in Division One, is adopted as the opinion of the Court en Banc. All concur.