193 So.2d 766

**SECURITY LIFE AND TRUST COMPANY**

v.

Evelyn B. GALIN (Linton) et al.

6 Div. 340.

Supreme Court of Alabama.

Sept. 22, 1966.

Rehearing Denied Jan. 26, 1967.

326

St. John & St. John, Cullman, for appellant.

Jas. F. Berry, Cullman, for appellee.

MERRILL, Justice.

This appeal is by Security Life and Trust Company, defendant below, from a judgment

in favor of the appellee in the sum of $10,000. The action was on a life insurance policy and was heard by the trial court without a jury. The widow, appellee, has since remarried, changing her name from Galin to Linton.

The main question presented is whether the policy was in force at the time the insured, Herman Galin, was killed in an automobile accident near Okeechobee, Florida on January 1, 1960. The widow alleged that after complying with Tit. 7, § 135, Code 1940, she joined Cullman Savings & Loan Association as plaintiff and she filed suit in 1962. The cause was tried in May, 1965.

Herman Galin and his wife executed a mortgage in the principal sum of $10,000 in favor of Cullman Savings & Loan Ass'n., Inc. on October 14, 1959. A week later, Galin made application for life insurance covering the unpaid installments of the loan, the monthly payments of which were $84.39. Galin made payments of $100 each on November 2, November 16, annd December 2, 1959 in person to Cullman Savings & Loan. On December 16, a letter was mailed to and received by Galin by the appellant insurance company, stating that although Galin had not presented himself to the designated physicians in Cullman for physical examination as requested in several letters, the company had decided to issue the $10,000 policy on a non-medical basis. The letter further stated that the policy would go forward to Cullman Savings & Loan within a few days "and the policy may be placed in full force and effect upon payment of the first monthly premium."

A few days before Christmas, Galin received a congratulatory card from Cullman Savings & Loan informing him that his policy had been received, that beginning January, 1960, his monthly payment would be increased to $91.79 to include the monthly premium on his policy.

No payment was made on the insurance premium or the policy between December 16, 1959 and the time of Galin's death on January 1, 1960, as the result of an automobile accident in Florida.

One Pat Clark was an officer of Cullman Savings & Loan and also a licensed agent for Security Life. His duties included mailing applications, collecting the premiums and remitting to the insurance company. He testified that the policy was dated December 22, 1959, but that the first premium was not due until January 1, 1960. He said that his usual practice was to remit to Security Life the amount of the annual premium on the 15th of the month following the issuance of the policy, and the insured would then pay the premiums to Cullman Savings & Loan in twelve monthly installments.

Clark's undisputed testimony was that Galin did not contact him or any other employee of Cullman Loan & Savings concerning the initial premium, that it was never paid by Galin, and that he never remitted the premium either before or after Galin's death. The policy remained in the custody of Cullman Savings & Loan until it was recalled by the insurer on January 2 or 3.

The application signed by Galin provided that the policy would have not been in force and effect until "the policy shall have been issued and the first premium thereon paid by me." The insurance policy provided that "This contract does not take effect until the first premium has been actually paid * * * ;" and we have already quoted from the letter which stated the same thing.

There was no material conflict in the evidence and the trial court held that the policy was in effect and entered judgment for the amount of the policy.

Appellant's main contention is that the first premium was not paid and the policy never became effective. Appellee argues that there was an unconditional delivery of the policy to the insurer's agent, Cullman Savings & Loan, and that there was an inference that credit was extended to the insured for the first premium.

The undisputed testimony is that the first premium was not paid before the insured's death. Appellee does make the point that the three $100 payments made by the insured provided an excess which would have been sufficient to cover the first premium, but the uncontroverted evidence was that all of the first three payments of $100 each were applied to principal and interest, and that Galin at no time ever contacted or said anything to Pat Clark or Cullman Savings & Loan about the insurance after applying for it.

■ Life insurance is a contract, and the meeting of the minds of the parties is essential to the execution of a policy. The contract is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement, proposals of the one party being accepted by the other, and the risk does not attach until the conditions precedent have been fulfilled. Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175.

■ Where a life policy provides that it will not become operative until the initial premium is actually paid, its payment is a condition precedent to putting the policy in operation. Reliance Life Ins. Co. of Pittsburgh v. Lowry, 229 Ala. 258, 156 So. 570.

■ An agent whose authority is limited to soliciting insurance, delivering policies and collecting premiums has no power to change stipulations in a contract of insurance; to do so he must either be a general agent or be specially authorized or his course of dealing to that extent have been ratified expressly or impliedly. United Ins. Co. of America v. Headrick, 275 Ala. 594, 157 So.2d 19; Liberty National Life Ins. Co. v. Staggs, 242 Ala. 363, 6 So.2d 432.

■ Generally, and in the absence of a special contract to the contrary, an insurance policy is considered delivered to the insured when it is delivered by the insurer to the agent. American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234; Stephenson v. Allison, 165 Ala. 238, 51 So. 622, 138 Am. St.Rep. 26. This principle is applicable in those cases where the first premium was paid with the application, or a note was given to the agent for that amount, or where a partial payment on the premium has been made.

■ Applying these principles to the facts, we can say that the policy was issued by appellant and delivered to its soliciting, but not general, agent, with a condition precedent that the first monthly premium be paid. As already shown, the first premium was not paid.

That brings us to the final question—was there any justified inference that the insurer extended credit to the insured so as to put the policy into effect before the payment of the first monthly premium? On this point, the appellee failed to meet the burden of proof and there was abundant evidence to the contrary.

The power of a general agent to bind the insurer by an agreement to extend credit to the insured has been recognized in Queen Ins. Co. of America v. Bethel Chapel, 27 Ala.App. 443, 174 So. 638[7], but that case also reiterates the principle that the payment or agreement to pay the premium by the insured is a condition precedent to, or at least concurrent with, the assuming of any liability by an insurance company.

There was no evidence of any agreement to extend credit, but assuming, for the sake of argument, that there were circumstances from which a slight inference could be drawn, there was no proof of an acceptance of an offer to extend credit.

■ "An acceptance of an offer to allow credit, if one was made, is as essential to make a valid agreement for credit, to change a conditional delivery of an insurance policy to an unconditional delivery, as it is to make any other contract. Such

an acceptance could not be merely a mental act or state of mind, as contended by plaintiff, but would require a promise to pay made known in some manner to defendant (the insurer)." Bernblum v. Travelers Ins. Co. of Hartford, 340 Mo. 1217, 105 S.W.2d 941. There was no evidence that there was either an offer to extend credit or an acceptance of an offer if made.

In Harrisburg Trust Co. v. Mutual Life Ins. Co. of New York, 278 Pa. 255, 122 A. 292, the Pennsylvania court was confronted with a situation not unlike the one at bar. That court quoted from an earlier Pennsylvania case (Marland v. Royal Ins. Co., 71 Pa. 393) as follows:

" 'It [the policy] was delivered to him [the broker] to be handed over if the premium was paid. The company did not charge him with the premium or keep any account with him. Thus by their own showing, the company in handing over the receipt and policy, gave Thompson no authority to deliver it to them the applicant for insurance] without payment of the premium. The policy by its own terms declared that "No insurance proposed to this company is to be considered in force until the premium and duty are actually paid. * * *" Having no authority to deliver without payment of the premium, it is obvious Thompson's willingness to do so, or to give credit, can create no contract with his principals. * * * What was testified, therefore, about the company's having accepted the risk, and having delivered the receipt and policy to Thompson, as the broker and mutual agent of the parties, creates no contract.' "

Since there was no proof of payment of the initial premium, no proof of an extension of credit, and no proof of an acceptance of extended credit if there could have been an implied offer to do so, it follows that the trial court erred in applying the law to the facts and the judgment must be reversed. In view of the reversal, it is not necessary to consider the points raised by other argued assignments of error.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.