BEATTY, Justice.
Appeal by Reserve Life Insurance Company (“Reserve Life”), defendant, from a judgment for plaintiff, Michael Haster, based upon a jury verdict, in plaintiffs action for breach of contract. We reverse and remand.
The action arose from an application for major medical insurance coverage filed by Dorothy F. Haster with James Sears, an independent insurance agent. The application was completed by Sears on September 7, 1982, at Mrs. Haster’s direction, while both were in her home.
The application included a number of medical questions. Sears marked Mrs. Haster’s responses to these questions. Her answers indicated no medical problems of any kind; that her last visit to a physician was in August 1982 for an annual checkup. Following completion of the questions, Mrs. Haster signed a statement located on the application which expressed the following:
“I declare that the statements and answers in this application and in the medical report ... are complete and true to the best of my knowledge and belief and all information given to the agent or to the medical examiner has been recorded correctly and in its entirety. I agree that: ... (c) neither the agent nor the medical examiner has authority in behalf of the Company to accept risks, or to make, alter or amend the policy ...; and (d) no insurance shall take effect except as may be provided in the conditional receipt until the application is approved by the Company at its Home Office and the policy is delivered to the Owner while the conditions affecting insurability are as described herein and the first premium has been paid in full....”
When the application was completed, Mrs. Haster was given a receipt for the first premium, $234.00, which she paid by check. By its express terms, the receipt was conditional, viz.:
“RECEIVED FROM Dorothy Haster the sum of $234.00 on 9/7, 1982, as payment on the first premium on a policy of insurance on each person proposed for insurance on this application subject to the conditions on this and the reverse side.
“This receipt is conditioned on the answers to the questions on this application and any Part Two-Statements to the Medical Examiner being true and correct. This receipt is subject to all terms, conditions and representations contained in the application and the respective coverage applied for.”
On the day following the completion of this application, Mrs. Haster was taken to the emergency room of the Baptist Medical Center in Montgomery. She was admitted to the hospital on September 9, 1982, and a few days later exploratory surgery upon her revealed abdominal cancer. Her death occurred on October 5, 1982.
*1054 Sears, meanwhile, forwarded the application to Reserve Life’s home office in Dallas, Texas, which received it on September 14, 1982. Noting that the applicant had indicated a recent doctor’s visit, Reserve Life forwarded a request for an attending physician’s statement on September 20, 1982, to Dr. Joe Perry, whom Mrs. Haster had named as her physician. Dr. Perry notified Reserve Life that these records would be obtained through a reporting service, Equifax Services, Inc. (Equifax). Reserve Life requested Dr. Perry’s records from Equifax and received them on or about November 9, 1982. In between Reserve Life’s request for the records and its receipt of those records from Equifax, the company received a telephone call from Sears informing it of Mrs. Haster’s death. When the records were received, they revealed discrepancies between the information contained therein and that contained in Mrs. Haster’s application. Dr. Perry’s records disclosed that Mrs. Haster had seen him on September 1, 1982. On this visit, moreover, Dr. Perry had diagnosed her as having diverticulosis; yet, Mrs. Haster had answered “no” to the following question:
“Has any person proposed for insurance ever had an indication, diagnosis, or treatment of:
“d. The gastro-intestinal tract, liver or pancreas, including but not limited to: jaundice, intestinal bleeding; ulcer, colitis, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder?”
Additionally, Mrs. Haster responded “yes” to the following question:
“Within the past 5 years, has any person proposed for insurance:
“c. Consulted or been examined by any physician or other practitioner?”
Her additional answer to this latter question was, “Only annual checkups, colds, etc.”
According to Reserve Life’s underwriting standards at the time, a waiver was required eliminating liability for diverticu-losis before a policy would issue. Accordingly, Mrs. Haster’s application was rejected and the premium refunded to the applicant’s address.
This action was filed by Mrs. Haster’s son, Michael Haster, as executor of her estate. Naming Reserve Life and Sears as defendants, the plaintiff alleged a breach of contract. Sears was dismissed as a defendant prior to trial on the oral motion of the plaintiff. By answer, Reserve Life averred that Mrs. Haster had misrepresented facts concerning her health which were material to its acceptance of the risk; that the conditions precedent to coverage contained in the application and receipt were not met; and that no insurance policy was ever issued.
At the close of plaintiff’s case, and at the close of all the evidence, defendant moved for a directed verdict, both times on the ground that no contract had been proved. These motions were overruled. Defendant’s motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, likewise was overruled.
In Gillilan v. Federated Guaranty Life Ins. Co., 447 So.2d 668 (Ala.1984), under similar facts, this Court, at 671-72, recited fundamental rules of long standing concerning applications for insurance:
“As a contract, a life insurance policy is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement, i.e., the proposals of one party being accepted by the other, and the risk does not attach until the conditions precedent have been fulfilled. Security Life and Trust Co. v. Galin, 280 Ala. 325, 328, 193 So.2d 766, 768 (1966); Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 148, 82 So. 175, 178 (1919). An application for insurance is a mere offer which does not ripen into a contract unless, and until, it is accepted by the insurer. Liberty National Life Ins. Co. v. Smith, 356 So.2d 646, 647 (Ala.1978).
“The terms and conditions of the proposal for insurance in this case are speci *1055 fied in the application and in the ‘conditional advance deposit receipt.’ Normally the application for a life insurance policy and a binder receipt must be taken together, and if they constitute all the elements of a contract, they are binding upon the insurer and insured. Liberty National Life Ins. Co. v. Patterson, 278 Ala. 43, 46, 175 So.2d 737, 740 (1965).”
The Court, at 673, also discussed its decision in Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175 (1919):
“In Cherokee Life Ins. Co. v. Brannum, supra, the Court held that where the applicant entered into a definite agreement that the insurance applied for should not be in effect until the policy was delivered during the ‘lifetime’ of the insured, the insurance policy was to be in force from the date of the unconditional approval of the application by the insurer’s medical director, and that if the premium was paid with the application, the payment was subject to the conditions stated in the receipt, which referred to and adopted the conditions in the application. There, the policy became effective only when those conditions were fulfilled. One of the conditions precedent was the delivery of the contract of insurance to the insured ‘during her lifetime,’ following its approval by the medical director. ...”
We have reviewed the terms of the insurance application, together with the terms contained in the “Conditional Receipt For First Premium,” and the facts of this case, and we conclude that Mrs. Haster died while her application was being processed but when no insurance contract had been either issued or offered by Reserve Life in response to the application.
As we understand the plaintiff’s arguments on appeal, he contends that a contract of insurance did exist for either of two reasons: (1) because of certain representations of Sears to Mrs. Haster’s daughter during Mrs. Haster’s hospitalization, or (2) because of a delay in acting upon the application.
Neither of these positions, we respectfully observe, is tenable. It is clearly established in the record that Sears was only an “independent broker” with no authority to bind Reserve Life to any contract of insurance. Indeed, after the Haster application was completed and forwarded, Sears became a “soliciting agent” with Reserve Life, with the same limits upon his authority. In addition, Mrs. Haster’s application itself, executed by her, acknowledged that “neither the agent nor the medical examiner has authority on behalf of the Company to accept risks, or to make ... the policy.” See Autrey v. Blue Cross & Blue Shield, 481 So.2d 345 (Ala.1985) (soliciting agent has no power to make binding contract of insurance or to change stipulations therein).
Regarding the second point of plaintiff’s argument, the mere delay in accepting an offer evidenced by an insurance application and in returning a first conditional premium for which no demand has been made does not amount to an acceptance. United Ins. Co. of America v. Headrick, 275 Ala. 594, 157 So.2d 19 (1963).
Having decided that no policy came into force, we pretermit discussion of other issues raised by the appellant.
The trial court erred in denying defendant’s motion for a directed verdict. The judgment, therefore, must be reversed, and the cause remanded for an order consistent with this opinion. It is so ordered.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.