This is an appeal by Donald E. Sanford, as Executor of the Estate of Ann Simerly Stair, his mother. He claims error in two of the trial court's rulings: 1) The striking of a fraud count because ". . . the cause of action did not survive the death of Ann Simerly Stair, pursuant to § 6-5-462 of the 1975 Code of Alabama," and 2) the striking of his demand for damages for mental anguish and physical suffering in the contract count. We affirm both rulings by the trial court.
Relevant portions of Sanford's complaint are as follows: *Page 261 
 "COMPLAINT
"This is a civil action to recover actual and special damages resulting from either the breech [sic] by the Defendants of a certain insurance contract or from a fraud perpetrated on the Plaintiff's Testatrix by the Defendants or both, as more particularly appears below:
 "A. "THE PARTIES
"The following are parties to this suit:
"1. The Plaintiff, Donald E. Sanford, is a resident of Prattville, Autauga County, Alabama. He brings this suit as Executor for the Estate of Ann Simerly, who will be hereinafter referred to as `Mrs. Stair' and who resided in Prattville, Autauga County, Alabama, immediately prior to her death on or about July 16, 1977. By order of the Honorable Probate Court of Autauga County, Alabama, the Plaintiff was named as Executor of the Estate of Mrs. Stair on July 27, 1977.
"2. The Defendant, Western Life Insurance Company, which will be hereinafter referred to as `Western Life', is a Minnesota Corporation licensed to do business in Alabama and maintains a business office and does business at 472 South Lawrence Street, Montgomery, Montgomery County, Alabama.
"3. The Defendant, St. Paul Life Insurance Company, which will be hereinafter referred to as `St. Paul Life', is a Minnesota Corporation licensed to do business in Alabama and maintains a business office and does business at 472 South Lawrence Street, Montgomery, Montgomery County, Alabama.
"4. The Defendant, The St. Paul Life and Health Insurance and Investment Products, Incorporated, which will be referred to hereinafter as `St. Paul Investments', whose true name and other identity is unknown to the Plaintiff but which will be supplied by amendment when they become known, receives mail at the following address: C/O Western Life Insurance Company, P.O. Box 78, St. Paul, Minnesota, 55102. St. Paul Investment is not licensed to do business in Alabama, but the Plaintiff believes that St. Paul Investment does business in Alabama through the other Defendants.
"5. On the basis of various communications with the Defendants, the Plaintiff believes that the Defendants are affiliated and do business under the name `The St. Paul'.
 "B. "THE INSURANCE POLICY OR CONTRACT
"1. On or about October 5, 1967, Mrs. Stair entered a certain insurance contract or policy, which will be hereinafter referred to as `the policy'. A copy of the policy is attached hereto marked as Plaintiff's Exhibit `A'.
"2. Under the policy the Defendants agreed, in consideration of a certain annual premium to be paid by Mrs. Stair in monthly installments, to pay Mrs. Stair a benefit in the event that she became totally disabled as a result of sickness.
"3. From October 5, 1967, until her death on or about July 16, 1977, Mrs. Stair paid the premium set by the policy in each of the agreed upon monthly installments, and the policy remained in full force and effect until the latter date.
 "C. "THE CAUSE OF ACTION
"1. On or about February 22, 1977, Mrs. Stair became totally disabled within the meaning of the policy as a direct result of a sickness, and remained totally disabled for the remainder of her life.
"2. A proper claim was made by Mrs. Stair to the Defendants for the benefits referred to in Part `B', 2, above, but the Defendants refused to pay said benefit except for a brief period during which Mrs. Stair was hospitalized.
"3. The reason given by the Defendants for their refusal to pay the promised benefit was that Mrs. Stair was retired. *Page 262 
"4. (a) If the policy did, in fact, cover Mrs. Stair's disability, not withstanding her retirement, then:
 "(i) in failing to pay the said benefits, the Defendants breeched [sic] the contract, or, in the alternative,
 "(ii) the Defendants defrauded Mrs. Stair of the benefits due her under the policy.
"(b) If because of her retirement Mrs. Stair's disability was not covered by the policy, then, in that event, the Defendants perpetrated a fraud on Mrs. Stair in that the Defendants by their words, actions and ommisions [sic] falsly [sic] led Mrs. Stair to believe that notwithstanding her retirement, she would have the right to the benefits if she became disabled within the meaning of the policy as a result of sickness and, as a result of said false belief induced in her by the Defendants and in reliance thereon, Mrs. Stair took certain actions, including purchasing the policy from the Defendants, paying the Defendants a premium of $13.07 each month from October of 1967 until her death in July of 1977, and desisted from certain other actions, including making other arrangements for her disability during her retirement, all to her detriment.
 "D. "DAMAGES "1. "DAMAGES FOR BREECH [sic] OF CONTRACT OR FOR FRAUD WITH REGARD TO BENEFITS
"If Mrs. Stair's disability was in fact covered by the policy, notwithstanding her retirement, then; as a result of the Defendants' breech [sic] of the policy or fraud with regard to the benefits, Mrs. Stair was deprived of her benefits and suffered grave mental anguish, the latter resulting in physical suffering as follows:
"(a) Actual damages:
"(1) Benefits due under the policy:
4.5 months disability — $900.00
Less paid by the Defendants — $120.00
Total $780.00
"(2) For mental anguish $75,000.00
 "(3) For physical suffering 25,000.00 ---------- "Total actual damages $100,780.00
 "(b) Punitive Damages for fraud of benefits — $1,007,800.00
"Therefore, the plaintiff demands judgment in the amount of $1,108,580.00."
Before addressing the merits of this appeal, we must clarify the posture in which this matter is presented. This action was commenced after the death of Ann Simerly Stair. All of the defendants except Western Life Insurance Company were dismissed. Sanford has since abandoned his claim that Western Life fraudulently induced Stair to buy the policy and keep it in force. Western Life has admitted liability in the amount of $780.00 based on the claim for benefits and partial summary judgment was entered accordingly. That order was not appealed. We now proceed to the merits.
Sanford asserts a claim for relief for "fraud of insurance benefits." For the purposes of this discussion, we assume, without deciding, that such a claim exists in Alabama. In essence, Sanford's claim for relief is identical to the tort of "bad faith," recognized in California and defined as follows:
 "Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. (Gruenberg v. Aetna Ins. Co., supra, 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 510 P.2d 1032; Communale v. Traders General Ins. Co., 50 Cal.2d 654, 658, 328 P.2d 198, 68 A.L.R.2d 883.) Breach of the covenant provides the injured party with a tort action for `bad faith,' notwithstanding that the acts complained of may also constitute a breach of contract. (Crisci v. Security Ins. Co., supra, 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 426 P.2d 173; Fletcher v. Western National Life Ins. Co., supra, 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78.) The cause of action is applicable to all insurance contracts, including policies of title insurance. (Kapelus v. United Title Guaranty Co., 15 Cal.App.3d 648, *Page 263 
653, 93 Cal.Rptr. 278.)" Jarchow v. Transamerica Title Ins. Co., 48 Cal.App.3d 917, 940, 122 Cal.Rptr. 470, 486 (1975).
The fountainhead of such a claim would be that the defendant insurance company has breached its duty of good faith and fair dealing by interfering with Stair's right to receive the benefits of the policy.
Because Stair died before this action was commenced, the trial court ruled that her action did not survive under §6-5-462, Code of Alabama 1975, which reads:
 "In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor."
Sanford contends this ruling was error because his fraud claim constituted an action "on a contract" as contemplated by the statute. We disagree.
In asking redress against Western Life for defrauding Stair of insurance benefits, Sanford necessarily avers a breach of duty imposed by law whether that duty be of good faith, fair dealing or honest disclosure; although such a duty, if it exists, must arise from the relationship of the parties as created by the insurance contract. This does not mean, however, that an action for breach of this duty is one "on a contract." Rather, the contract merely establishes the relationship from which such a legally imposed duty could spring. See, e.g.:Sewell v. Grand Lodge of Int'l Ass'n of Mach. Aero Workers,445 F.2d 545 (5th Cir. 1971), cert. denied, 404 U.S. 1024,92 S.Ct. 674, 30 L.Ed.2d 674 (1972); United States Fidelity Guaranty Co. v. Birmingham Oxygen Service, Inc., 290 Ala. 149,274 So.2d 615 (1973); Paul v. Escambia County Hospital Board,283 Ala. 488, 218 So.2d 817 (1969); Vines v. Crescent TransitCo., 264 Ala. 114, 85 So.2d 436 (1956).
The fraud action brought by Sanford is ex delicto in nature. As such, it does not survive in favor of the personal representative of a deceased person under the provisions of §6-5-462, supra. Standard Accident Ins. Co. v. Whitset, 270 Ala. 334, 118 So.2d 922 (1960).
We are not persuaded by Sanford's argument that Western Life is estopped to raise the non-survival of Stair's claim. He asserts: 1) That the insurance contract contains a provision which prevented Stair from bringing an action for sixty days; 2) that even if this provision were waived, Stair had a contractual right not to bring her action within the sixty-day period; and 3) that the placing of such a provision in the contract was sufficient affirmative conduct by Western Life to invoke the doctrine of estoppel. The contract contains the following provision:
 "No action at law or in equity shall be brought to recover on this Policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this Policy . . . ."
The language of this provision contemplates an action excontractu "to recover on this Policy." It addresses only the time in which an action to recover on the contract may be commenced and does not limit the rights of a party to bring an action sounding in tort. The provision could not have been invoked to prevent Stair from bringing an action ex delicto
against Western Life, and it cannot be relied upon to excuse her delay. We cannot accept the notion that the mere placing of a provision into a contract is sufficient affirmative conduct to invoke the doctrine of estoppel so as to affect the rights of the litigants in an action to which the provision has no application.
Finally, we consider Sanford's contention that it was error to strike his demand for damages for mental anguish and physical suffering resulting from Western Life's breach of the insurance contract. He has *Page 264 
carefully surveyed the Alabama decisions allowing recovery of such damages in actions on contracts. Alabama Water Service Co.v. Wakefield, 231 Ala. 112, 163 So. 626 (1935) — (breach of contract to provide water service); Becker Roofing Co. v. Pike,230 Ala. 289, 160 So. 692 (1935) — (breach of warranty regarding roofing of residence); F. Becker Asphaltum RoofingCo. v. Murphy, 224 Ala. 655, 141 So. 630 (1932) — (breach of warranty regarding roofing of residence); Nashville, C. St.L. Ry. v. Campbell, 212 Ala. 27, 101 So. 615 (1924) — (breach of contract to deliver a passenger to a certain railroad station); Pullman Co. v. Meyer, 195 Ala. 397, 70 So. 763 (1916) — (breach of contract to provide special accommodations).
As a general rule, mental anguish is not a recoverable element of actual damages growing out of a breach of contract.Birmingham Water Works Co. v. Vinter, 164 Ala. 490, 51 So. 356
(1910). Certain exceptions to this rule have been stated in the cases relied upon by the appellant. F. Becker Asphaltum RoofingCo., supra. In that case, the following rationale for the exception was quoted with approval from 8 R.C.L. page 529, § 83:
 ". . . `Yet where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded.' . . ." (224 Ala. at 657, 141 So. at 631.)
We agree with the trial court that this case does not fall within an exception to the general rule.
Nothing more being shown for reversal, the judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.