The issues on appeal are whether a contract of life insurance had been created between an applicant for a life insurance policy and an insurance company, prior to the applicant's death, and whether the wife of the deceased applicant may be permitted to bring a negligence claim against the insurance company and its agent, either individually or as administratrix of her deceased husband's estate. The trial court's summary judgment is affirmed.
On November 29, 1980, Billy Wayne Gillilan (applicant), the husband of plaintiff/appellant Janice Gillilan, went to the office of Wanda Thrift, an agent of Federated Guaranty Insurance Company (Federated), and applied for a $40,000 policy of ordinary life insurance. The application contained the following terms and conditions:
 "I have paid $87.67 to Wanda Thrift, Agent, of Federated Guaranty Life Insurance Company (herein called `Company') as a deposit to be applied on the first premium for the insurance herein applied for if approved and issued subject to and in accordance with Conditional Advance Premium Deposit Receipt for such payment.
 "I agree, on behalf of myself and any other persons who shall have or claim any interest in a life insurance policy contract (herein called `Contract') issued by reason of this application, as follows:
 "1. `Application,' as herein used, shall mean this Part 1 and Statement to Agent or Statement to Medical Examiner whichever is required by Company's rules for this particular proposed insured.
 "2. That in case deposit is not made at the time of this application, then the Contract herein applied for shall not take effect until this application has been received, approved and accepted by Company at its Home Office in Montgomery, Ala., and the Contract issued thereon delivered to me personally and payment to Company of full first premium therefor during the life-time and continued insurability of Proposed Insured, according *Page 670 
to Company's standards, whereupon Contract shall be deemed to take effect as of the date of such approval of this application.
 "3. That if, after receipt at its Home Office in Montgomery, Ala., of this application, Company's Underwriting Department, after investigation, shall be satisfied that at the time of completion of said application, the Proposed Insured was insurable and entitled, under Company's rules and standards, to insurance on the plan and for the amount applied for at Company's published rates corresponding to the age of the Proposed Insured, and shall accept and approve said application, the insurance shall take effect as of the date of the completion of said application, provided the amount of the Conditional Advance Premium Deposit equals at least the full first premium (as shown in Item 9 above) for the Contract applied for.
 "4. That in case Company, according to its underwriting rules, should offer to issue a Contract different from that applied for above, or in case of any apparent errors or omissions found by Company in this application, Company is hereby authorized to amend this application by recording the change in the space provided for `Home Office Endorsement,' and that my acceptance of any Contract issued on this application shall constitute a ratification by me of such changes or amendments.
 "5. That this application, and any amendments thereto, together with the Contract herein applied for, shall constitute the entire Contract between the parties, and that no information or knowledge obtained by any agent, Medical Examiner, or any other person in connection with this application shall be binding upon Company unless the same is reduced to writing and made a part of this application.
 "6. I further expressly agree and understand that no agent, general or special, or any other person, except Home Office Underwriters in the Home Office of Company at Montgomery, Ala., has any authority to accept and approve on behalf of Company, the insurance herein applied for.
 "The Proposed Insured hereby agrees that all statements herein are full, complete, and true, to the best of my knowledge and belief and shall be the basis for an insurance policy on his (her) life, as applied for above, to be issued to the Applicant upon his (her) application of which this shall form a part and all rights, title and interest in and to said insurance policy shall be vested in the applicant.
"* * *
 "/s/ Billy W. Gillilan
"Signature of Proposed Insured"
The applicant made a check payable to Federated in the amount of $87.67, which was given to the agent as a deposit to be applied against the first premium for the insurance if approved and issued. It is undisputed that Wanda Thrift loaned to the applicant money to pay part of the deposit. The receipt issued by the agent to the applicant at the time the application was taken was as follows:
"CONDITIONAL ADVANCE PREMIUM DEPOSIT RECEIPT
 "RECEIPT NO. B 167572 November 29, 1980 RECEIVED FROM Billy W. Gillilan Applicant, the sum of $87.67 which is tendered as a deposit to be applied upon the first premium for a life insurance policy contract (herein called `contract') if approved and issued by Federated Guaranty Life Insurance Company (herein called `Company').
 "1. That if, after receipt at its Home Office in Montgomery, Ala., of this application which shall be comprised of this Part 1 (Statement to Agent or Statement to Medical Examiner, whichever is required by Company's rules for this particular Proposed Insured), Company's Underwriting Department, after investigation, shall be satisfied that at the time of completion of said application, the proposed insured was insurable and entitled, under Company's rules and standards, to *Page 671 
insurance on the plan and for the amount applied for at Company's standard published rates corresponding to the age of the Proposed Insured, and shall accept and approve said application, the insurance shall take effect as of the date of the completion of said application, PROVIDED the amount of the Conditional Advance Premium Deposit equals at least the full first premium (as shown in Item 9 of the application) for the Contract applied for.
 "2. That if the above deposit amounts to less than the full premium (as shown in Item 9 of Part 1 of the application), or, if the Company's Underwriting Department, after investigation, does not accept and approve said application exactly as applied for, but does accept and approve the application subject to modification either as to plan, amount, premium rate and/or disallowance of any supplementary benefit applied for, the insurance offered in the modified Contract shall take effect as of the date the Company's Underwriting Department at its Home Office in Montgomery, Ala., accepts and approves said application, or approves a modified offer, PROVIDED the applicant accepts delivery of the Contract by paying the full first premium, or balance thereof, during the lifetime and continued insurability of the Proposed Insured, according to Company's standards, within sixty days from said effective date of Contract.
 "3. That if this application is not accepted and approved by the said Home Office of Company within sixty (60) days from the date thereof, then no Contract will be issued, and upon surrender of this receipt, Company will promptly refund the above deposit to Applicant.
 "No agent, general or special, or any other person, is authorized by Company to waive or modify in any way any of the conditions of this Conditional Advance Premium Deposit Receipt. THE LIABILITY OF THE COMPANY UNDER THIS RECEIPT IS LIMITED TO THE AMOUNT OF DEPOSIT IF THE TOTAL INSURANCE ON LIFE OF PROPOSED INSURED EXCEEDS OR WILL EXCEED $50,000.
 "This receipt covers a deposit of the above amount which is not to be applied as payment of premium for insurance applied for until all applicable conditions contained herein have been met.
 "/s/ Wanda Thrift Agent "Federated Guaranty Life Insurance Company "Home Office, Montgomery, Alabama"
On December 31, 1980, the applicant died intestate, and on January 9, 1981, Federated refunded the premium to the administratrix of the applicant's estate.
The plaintiff filed a multicount complaint, which was amended several times, against Federated and other named and unnamed defendants, alleging, among other causes of action, breach of an alleged contract of life insurance, breach of an agreement to insure the husband of the plaintiff, breach of contract on the ground that the receipt constituted a life insurance contract, a claim that the defendants were negligent in failing to provide insurance coverage on the life of the decedent, and bad faith refusal to pay proceeds of the policy.
Defendants moved for summary judgment, alleging that there was no genuine issue as to any material fact and that the defendants were entitled to judgments as a matter of law. The court granted the defendants' motion for summary judgment and plaintiff appealed.
 I
As a contract, a life insurance policy is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement, i.e., the proposals of one party being accepted by the other, and the risk does not attach until the conditions precedent have been fulfilled. Security Life and Trust Co. v. Galin, 280 Ala. 325,328, 193 So.2d 766, 768 (1966); Cherokee Life Ins. Co. v.Brannum, 203 Ala. 145, 148, 82 So. 175, 178 (1919). An application for insurance is *Page 672 
a mere offer which does not ripen into a contract unless, and until, it is accepted by the insurer. Liberty National LifeIns. Co. v. Smith, 356 So.2d 646, 647 (Ala. 1978).
The terms and conditions of the proposal for insurance in this case are specified in the application and in the "conditional advance deposit receipt." Normally the application for a life insurance policy and a binder receipt must be taken together, and if they constitute all the elements of a contract, they are binding upon the insurer and insured.Liberty National Life Ins. Co. v. Patterson, 278 Ala. 43, 46,175 So.2d 737, 740 (1965).
The final paragraph of the receipt in this case states unambiguously that the deposit is not to be applied as a premium payment for the insurance applied for until the applicable conditions in the receipt have been met. Paragraph three of the terms and conditions of the application and paragraph one of the receipt provide that the insurance shall take effect as of the date of the application's completion, if: after receipt of the application in its home office, Federated's underwriting department "after investigation," is satisfied that at the time of the completion of the application the "proposed insured was insurable" and entitled under its rules and standards to insurance on the plan and in the amount applied for "at the company's standard published rates," corresponding to the age of the insured, and accepts and approves the application. Moreover, paragraph six of the application states that only the home office underwriters have the authority to accept and approve an application on behalf of Federated.
E.M. McKinney, an administrator in charge of life operations for Federated, testified, on deposition, concerning the review of the deceased's application for a life insurance policy. He stated that when the application and the medical examiner's report was received by the home office in Montgomery, it was checked for completeness, entered in the company's computer, and then sent to Federated's underwriting department, which commenced its under-writing investigation. After additional medical information was requested and received by Federated from the applicant's physician, the underwriting department determined, based on the additional medical information, that the applicant's risk was not acceptable. Consequently, on December 23, 1980, Federated's underwriting department submitted its entire file on the applicant to its reinsurer, North America Reassurance Company, so that it could determine whether it would offer reinsurance on the risk at an increased premium rate. McKinney stated that the application was still being processed when the applicant died on December 31, 1980, and that upon learning of the applicant's death, Federated once more reviewed the application to determine if the applicant could have been insured at Federated's standard rates at the time the application was made. On January 9, 1981, Federated informed appellant, as administratrix of the deceased applicant's estate, that the deceased was uninsurable at the time the application was made and refunded the premium deposit.
As McKinney's deposition suggests, the applicant was not insurable at Federated's standard published rates at the date of his application, and as a result, Federated did not accept the applicant's proposal for insurance. Consequently, under these facts, the conditions in paragraph one of the receipt necessary for the insurance to take effect at the date of the application were not met.
Examining the remaining terms and conditions of the receipt and application, we note that paragraph two of the receipt provides that if, after its investigation, Federated's underwriting department does not accept the application as applied for but offers a modified contract as to plan, amount, or premium rate, the contract offered must be accepted by the applicant "during the lifetime and continued insurability of the proposed insured." When this occurs, the receipt states that the modified contract takes effect as of the date Federated's underwriting department accepts *Page 673 
and approves the application or a modified offer.
In Cherokee Life Ins. Co. v. Brannum, supra, the Court held that where the applicant entered into a definite agreement that the insurance applied for should not be in effect until the policy was delivered during the "lifetime" of the insured, the insurance policy was to be in force from the date of the unconditional approval of the application by the insurer's medical director, and that if the premium was paid with the application, the payment was subject to the conditions stated in the receipt, which referred to and adopted the conditions in the application. There, the policy became effective only when those conditions were fulfilled. One of the condition precedents was the delivery of the contract of insurance to the insured "during her lifetime," following its approval by the medical director. 203 Ala. at 152, 82 So. at 182. Likewise inIvie v. International Life Ins. Co., 217 Ala. 559, 117 So. 176
(1928), the Court considered provisions very similar to the provisions in the insurance application and receipt in the instant case and opined:
 "The contractual status of the parties became fixed upon the death of the applicant. At that time there had been no contract agreed upon; the application was still pending and undisposed of when knowledge of the death of the applicant came to the company. Thereafter no new contract between the parties by a waiver or estoppel could be created, as one of the contracting parties was dead. Valentine v. W.O.W., 180 Cal. 192, 180 P. 2, 8 A.L.R. 380."
217 Ala. at 561, 117 So. at 177-178.
After reviewing the terms of both the insurance application and the "conditional advance premium deposit receipt," and the attendant facts of this case, we conclude that the applicant died while the application was being processed and that no insurance contract had been either issued or offered by Federated in response to the application prior to the applicant's death.
Appellant asserts that the question of whether Federated's failure to issue a policy was within the bounds of reasonableness constituted a jury question and that Federated should be estopped to deny coverage under the circumstances. While a proposed insured is justified in assuming that an insurer will exercise reasonable care and diligence in acting upon his application, Liberty National Life Ins. Co. v. Smith,supra, 356 So.2d at 648, mere delay in accepting an offer that is evidenced by a life insurance application and in returning a cash premium for which no demand has been made, does not amount to acceptance of the application and convert it into a contract. United Ins. Co. of America v. Headrick, 275 Ala. 594,598, 157 So.2d 19, 23 (1963). Paragraph three of the receipt states, however, that if the application is not accepted and approved by the company within sixty days, then no contract will be issued and upon surrender of the receipt, the deposit will be refunded. Because the sixty day provision is absolute, there was no unreasonable delay, as a matter of law, since the application in this case was rejected and the premium was refunded within forty-four days. Liberty National Life Ins. Co.v. Smith, supra, 356 So.2d at 648.
There is no foundation to appellant's assertion that because of applicant's poor medical condition and the medical information in Federated's possession, that Federated and its agent knew that applicant would never be issued an insurance policy when the company and its agent received his application on November 29, 1980. As we have previously shown, Federated did not violate any of the provisions of the agreement its agent made with the insured; therefore, there can be no liability for Federated's failure to issue a policy, Federated having reserved to itself the right to determine whether the insured was an insurable risk, and having made that determination within the time set out in the agreement.
 II
Appellant, alleging that Federated's agent negligently failed to obtain insurance and that Federated negligently processed the application, sues both individually and *Page 674 
in her capacity as personal representative of her deceased husband.
A claim for negligence is one sounding in tort. A claim sounding in tort for which no action has been filed does not survive death in favor of the personal representative. Code 1975, § 6-5-462; Bates v. L N Employees Credit Union,374 So.2d 323, 324 (Ala. 1979); Sanford v. Western Life Ins. Co.,368 So.2d 260, 263 (Ala. 1979). As noted in Sanford, supra, the fact that a legal duty stems from a contract out of which the tort is claimed to have been committed, does not transform an ex delicto action into a survival contract action that survives in favor of the personal representative. 368 So.2d at 263. Because this action was not commenced until May 1, 1981, after the death of the applicant, the negligence claim alleged by appellant in her capacity as personal representative of the deceased did not survive.
With respect to the maintenance of the negligence action individually, appellant argues that she was the designated beneficiary of the proposed policy and part owner of the funds that paid the advance premium deposit.
The case of Royal Neighbors of America v. Fortenberry,214 Ala. 387, 107 So. 846 (1926), is dispositive of appellant's negligence claim. In Royal Neighbors of America, Mrs. Fortenberry had completed an application for life insurance with the defendant insurer, but died before the policy was delivered. Mr. Fortenberry, the named beneficiary in the application, brought suit. As the Court described:
 "The theory of the suit is for the breach of parol agreement to insure, or negligence in unnecessary delay in the transmission of the application and its conduct in the home office to the issue of the beneficiary certificate and its return for acceptance by the assured, resulting in financial loss to the beneficiary, for which he might sue.
214 Ala. at 388-389, 107 So. at 847. In holding that the plaintiff could not maintain either claim, the Court opined:
 "The applicant, if she had received the policy, might have changed the beneficiary named therein, if done subject to its prescribed form and terms. That the mere issuance of the policy would not have established in the beneficiary rights paramount to those of the assured is the rule of old line policies. [Citations omitted.]
"* * *
 ". . . It would seem to follow that whether, under an old line policy or fraternal insurance, the right of action for failure to promptly issue, or negligence in the due issue of the policy or certificate, pursuant to the application, is in the insured or her personal representative, and not in the beneficiary named in the application. 1 Williston on Contracts, p. 748-50."
214 Ala. at 389-390, 107 So. at 848-849.
Appellant's reliance upon Royal Neighbors of America is misplaced; that case is not authority for her to bring an action, either individually, or as a personal representative. Whether or not the negligence action survived was not before the Court in that case, since the suit was not brought by the husband as personal representative. Thus, Royal Neighbors ofAmerica is authority for the proposition that a beneficiary named in a pending insurance application does not have a right to maintain an action against an insurance company for negligently processing an insurance application. Also, under the particular facts of this case there was no cause of action available to the personal representative because there was no breach of any duty, as a matter of law, by Federated, because under the terms of the agreement between the company and the deceased, the time within which the company could decide whether to issue a policy or not had not expired.
Because there was no genuine issue as to any material fact in this case, and because defendants, as the moving parties, were entitled to judgment as a matter of law, the Court concludes that the trial court properly granted summary judgment. Rule 56, *Page 675 
Ala.R.Civ.P.; Houston v. McClure, 425 So.2d 1114, 1116 (Ala. 1983).
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.