PER CURIAM.
These are consolidated appeals by the defendants, John Hancock Variable Life Insurance Company (“John Hancock”) and Curtis Bullock, from a judgment for the plaintiff, Lois Annette Pierce, in plaintiffs action based upon breach of contract and fraud.
The action arose out of the issuance of a $200,000 policy of life insurance by John Hancock to Glen D. Pierce, naming his wife, Lois Annette Pierce, as beneficiary.
The policy was solicited by Curtis Bullock, a sales representative for John Hancock. In 1981, prior to the transaction in question, Bullock had sold the Pierces a contract providing group health insurance. In connection with the application for the health insurance, Mr. Pierce represented that he was in good health, had not experienced an illness or been attended by a physician within the preceding five years, and had not suffered from heart trouble, high blood pressure, or a number of other diseases or illnesses.
In April 1983, Bullock met with the Pierces in connection with a policy of life insurance. The testimony concerning the content of the discussion that took place at that time is conflicting. According to Bullock, Pierce denied having had any major health problems except diverticulosis, with related chest pains, and childhood asthma. On the other hand, Mrs. Pierce and her daughter testified that Mr. Pierce told Bullock of various health problems and past periods of hospitalization and of his treatment for alcoholism. According to Mrs. Pierce, Bullock’s response was that if the problems were all cleared up, Mr. Pierce did not have to mention it to anyone else, that “what John Hancock didn’t know wouldn’t hurt them.”
During the course of a medical examination of Mr. Pierce, he was asked a number of questions by the examining physician regarding his health and medical history. Specifically, he was asked whether he had been treated for alcoholism, heart trouble, arthritis, or had had any checkups, consultation, illness, injury, surgery, etc. Mr. Pierce answered these inquiries in the negative; however, it was established at trial that Pierce had had a prior history of bad health. He suffered from arthritis; he had been hospitalized in 1980 for chest pains; he had been diagnosed as having cervical and lumbar osteoarthritis; he suffered from high blood pressure; and he had been treated for alcoholism.
Four months after the issuance of John Hancock’s life insurance policy to him, Mr. Pierce died of a heart attack. When John Hancock refused to pay the policy amount, Mrs. Pierce brought this action. John Hancock answered with a general denial, averred that the complaint failed to state a proper claim in fraud, and sought a rescission of the policy for misrepresentations or incorrect statements contained in the application. Curtis Bullock defended with a general denial.
The case was tried to a jury on the contract and fraud counts. At the close of plaintiff’s case and at the close of all the evidence, both defendants moved for directed verdicts on each count. These motions were denied, and the case was submitted to the jury on both counts. The jury returned a verdict against both Bullock and John Hancock on the fraud count and assessed damages in the amount of $350,000. The defendants’ post-trial motions for judgment notwithstanding the verdict or new trial were denied, and this appeal followed.
The defendants have presented the following contentions on this appeal:
"The award of punitive damages in civil proceedings in Alabama violates the constitution of Alabama and the constitution of the United States.
“The trial court applied the wrong standard of proof in submitting the fraud claim to the jury.
“There was insufficient evidence of reasonable reliance by Mrs. Pierce on the alleged fraud.
“There was insufficient evidence to impute Mr. Bullock’s alleged misrepresen *721 tation to John Hancock Variable Life Insurance Company.
“There was insufficient evidence to support an award of punitive damages.”
The elements of an action in fraud, as required under the provisions of Code of 1975, § 6-5-101, are stated in Bowman v. McElrath Poultry Co., 468 So.2d 879, 880 (Ala.1985):
“(1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) acted upon by the opposite party; and (4) reliance by the complaining party which was justifiable under the circumstances.”
Mrs. Pierce did not bring this action in a representative capacity; thus, she was not proceeding to recover damages for her late husband or his estate, and there is no evidence of any action, based upon fraud in the ‘procurement of the policy, having been filed by Mr. Pierce before he died. See Myers v. Geneva Life Ins. Co., 495 So.2d 532 (Ala.1986). A tort claim by him, therefore, would not have survived in favor of his personal representative. Code of 1975, § 6-5-462; Gillilan v. Federated Guaranty Life Ins. Co., 447 So.2d 668 (Ala.1984).
Mrs. Pierce did bring this action in her individual capacity to recover for a fraud practiced upon her. Accordingly, it was incumbent upon her to prove the elements of a cause of action in fraud as set out above. In Ames v. Pardue, 389 So.2d 927, 931 (Ala.1980), this Court stated:
“It is fundamental that the represen-tee who relied on the defendant’s misstatement and the plaintiff who was injured must be one and the same. The representee must have relied on and have been deceived and damaged by the statement. Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59 (1896). Recovery cannot be had unless plaintiff relied on the fraudulent representations of defendant. Jordan v. Pickett, 78 Ala.331 (1884).”
The alleged misrepresentations made to Mrs. Pierce were those of Bullock, who, upon learning of Mr. Pierce’s various medical conditions, is alleged to have stated that if these conditions were all cleared up, Mr. Pierce did not have to mention it to anyone else, and that “what [John Hancock] didn’t know wouldn’t hurt them.” The facts in North Carolina Mutual Life Ins. Co. v. Holley, [MS. 84-1211 & 84-1223, September 18, 1987] (Ala.1987), are similar to the facts in this case, and the principle of law applied in that case is controlling here. In North Carolina Mutual, Watts, the agent, told the plaintiff in her presence and in the presence of the insured that he had an insurance policy for the insured with “No medical questions asked” and also told the plaintiff Holley “Mattie, you’ll be the beneficiary of this policy if anything happens to Pat to help with funeral expenses.” (Emphasis added.) Watts did not tell the insured or the plaintiff that good health was necessary in order for one to be insured under the policy, because, he said, the company assumed she was in good health. This Court held in North Carolina Mutual that the statement made by Watts constituted a misrepresentation on which an action for fraud could be based.
Likewise, on the authority of North Carolina Mutual, we affirm the judgment in regard to liability and remand the case for a determination of the question whether the verdict of the jury was excessive.
See North Carolina Mutual Life Ins. Co. v. Holley, slip op. at pp. 9 and 10, where we said:
“The last issue we address is North Carolina Mutual’s claim that the verdict was excessive.
“We do not, at this time, decide this issue, but we remand the cause to the trial court to review its judgment in accordance with the guidelines set out in our recent decisions in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala.1986); and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986).
“The trial court, in its discretion, may or may not order a further hearing to reconsider the claim that the verdict is excessive. In any event, the trial court *722 is directed to report its findings and conclusions within 28 days of this opinion.”
AFFIRMED, IN PART; REMANDED WITH DIRECTIONS.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, J., concurs specially.
TORBERT, C.J., and BEATTY, HOUSTON and STEAGALL, JJ., dissent.