HOUSTON, Justice.
The plaintiff, Ruby Knight, individually and as the administratrix of the estate of her deceased husband, Grady Knight, appeals from a summary judgment for the defendant, Alfa Life Insurance Corporation (“Alfa”), in this action to recover damages for breach of a life insurance contract. We affirm.
Grady Knight applied to Alfa, through one of its soliciting agents, for a $25,000 life insurance policy. Ruby Knight was to be the primary beneficiary. Mr. Knight paid the agent $114 at the time the application was taken as a deposit to be applied against the first premium for the insurance, if the application was approved by Alfa’s underwriting department and the policy was issued. The application that Mr. Knight signed provided, in part, that no insurance would become effective before the issuance and delivery of a policy, unless all of the conditions set out in a “conditional receipt” were fulfilled. A “conditional receipt,” as referenced in the application, was given by the agent to Mr. Knight for the $114. That receipt provided, in pertinent part, as follows:
“1. CONDITIONS TO COVERAGE: NO INSURANCE WILL BECOME EFFECTIVE BEFORE THE DELIVERY AND ACCEPTANCE OF A POLICY OF INSURANCE UNLESS AND UNTIL EACH AND EVERY ONE OF THE FOLLOWING CONDITIONS IS FULFILLED EXACTLY:
[[Image here]]
“(b) All medical examinations, tests, x-rays and electrocardiograms required by the Underwriting Department of the Company must be completed and received at its Home Office in Montgomery, Alabama, within sixty (60) days from the date of completion of Part 1 of the application.
“(c) The Company’s Underwriting Department at its Home Office must be satisfied that on the Effective Date, as defined below, the Proposed Insured (and also the Payor if Payor Benefits are applied for) was insurable and a risk acceptable to the Company under its rules, limits and standards for the plan and for the amount applied for at the Company’s standard published rates corresponding to the age of such person, without any modification either as to plan, amount, riders, supplemental agreements, and/or the rate of premium.”
Mr. Knight was informed by the agent that he probably would have to have a medical examination.
Mr. Knight died before a policy of insurance was delivered to him; therefore, the sole issue presented on this appeal is whether the trial court properly granted Alfa’s motion for a summary judgment on the ground that all of the conditions enumerated in the receipt had not been fulfilled.
In Gillilan v. Federated Guaranty Life Ins. Co., 447 So.2d 668 (Ala.1984), under similar facts, this Court, at 671-72, recited the following fundamental rules of long standing concerning applications for insurance:
“As a contract, a life insurance policy is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement, i.e., the proposals of one party being accepted by the other, and the risk does not attach until the conditions precedent have been fulfilled. Security Life and Trust Co. v. Galin, 280 Ala. 325, 328,193 So.2d 766, 768 (1966); Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 148, 82 So. 175, 178 (1919). An application for insurance is a mere offer which does not ripen into a contract unless, and until, it is accepted by the insurer. Liberty National Life Ins. Co. v. Smith, 356 So.2d 646, 647 (Ala.1978).
“The terms and conditions of the proposal for insurance in this case are specified in the application and in the ‘conditional advance deposit receipt.’ Normally the application for a life insurance policy and a binder receipt must be taken *1231 together, and if they constitute all the elements of a contract, they are binding upon the insurer and insured. Liberty National Life Ins. Co. v. Patterson, 278 Ala. 43, 46, 175 So.2d 737, 740 (1965).”
We have carefully reviewed the terms of the application and the conditions set out in the receipt, in conjunction with the undisputed facts in this case, and we conclude that Mr. Knight died while his application was being processed, before all of the conditions precedent to coverage were fulfilled. The undisputed facts show that the required medical examination and tests were never performed on Mr. Knight and that Mr. Knight was not, under Alfa’s underwriting standards, an acceptable risk for the amount of insurance that he had applied for at the company’s standard published rates. Put simply, the undisputed evidence established that Mr. Knight and Alfa never reached an agreement; Mr. Knight made an offer to purchase life insurance that Alfa never accepted.
We note Ms. Knight’s argument that a fact question was presented as to whether a contract of insurance came into existence 1) because Mr. Knight paid $114 to the agent at the time the application was taken; 2) because a “Data Sheet,” generated by computer in connection with Alfa’s internal processing procedures, listed the date the application was taken as the “Effective Date” and the “Policy Date”; 3) because Alfa did not immediately inform Mr. Knight that, as a result of his previous stroke, he could not be approved for the amount of insurance that he had applied for at the company’s standard published rates; and 4) because someone at Alfa, presumably the underwriter, stamped “Canceled” on the cover of Mr. Knight’s file, and the voucher attached to Alfa’s premium refund check read “L000290382 Cancellation.” However, Ms. Knight’s argument in this regard is simply not supported by the record. The receipt clearly states that the $114 paid by Mr. Knight was a “deposit” that was “not to be applied as payment of premium until all of the applicable conditions contained [in the receipt had] been met.” Alfa deposited the $114 into its “deposit account,” not into its “premium account.” Alfa refunded the $114 to Ms. Knight shortly after Mr. Knight’s death. The evidence does not create an inference that Mr. Knight paid a “premium” at the time the application was taken. As for the “Data Sheet,” the undisputed testimony of Kerry Lashlee, a vice president of Alfa who was charged with the responsibility of supervising the company’s underwriting department in Montgomery, showed that the “Effective Date,” as shown on the “Data Sheet,” was the effective date of the application. Lashlee explained that the “Effective Date,” as defined in the receipt, referred to the effective date of coverage and that the “Policy Date” and the “Effective Date,” as defined in the receipt, were basically the same. The “Policy Date” was defined by Alfa as either the application date or the date when the medical requirements were met, whichever occurred later. If a policy other than the one applied for was issued, the “Policy Date” would be the date of approval. “Effective Date” was defined in the receipt as the later of 1) the date of completion of part one of the application; 2) the date of completion of all required medical examinations, tests, etc.; or 3) the date requested in the application for the policy to be issued. The receipt also stated that when all of the conditions set out in the receipt had been fulfilled, then the insurance applied for would “become effective as of the Effective Date.” Although we are uncertain, based on our review of the record, why Alfa listed the date the application was taken as the “Policy Date,” it is undisputed that all of the conditions precedent to coverage set out in the receipt were not fulfilled. Thus, it makes no difference what date Alfa listed on the “Policy Date” — no contract of insurance ever came into existence. With respect to Alfa’s delay in notifying Mr. Knight that, as a result of his previous stroke, he could not be approved for the amount of insurance that he had applied for at the company’s standard published rates, we again note the testimony of Lashlee, which is undisputed, that the delay occurred because Alfa was considering whether to offer Mr. Knight a modified *1232 policy at a different, and presumably higher, rate. In any event, this Court stated in Gillilan, supra, at 673, that “mere delay in accepting an offer that is evidenced by a life insurance application and in returning a cash premium for which no demand has been made, does not amount to acceptance of the application and convert it into a contract.” Under the terms set out in the receipt, Alfa had 60 days to process Mr. Knight’s application. Because that 60-day-provision was absolute, and because Mr. Knight’s application was declined and his deposit was refunded within 60 days, there was, as a matter of law, no unreasonable delay in Alfa’s actions in this case. See Gillilan, at 673. Finally, as stated, someone at Alfa stamped the word “Canceled” on the cover of Mr. Knight’s file and Alfa attached a voucher to its premium refund check that indicated, at least on its face, that a policy bearing the number L290382 had been “canceled.” However, we note that in Mr. Knight’s file, the underwriter stated that the application had been “declined” and that Lashlee indicated in a letter to Ms. Knight that the deposit was being refunded because the application had not been approved, for lack of sufficient medical information. In any event, Alfa’s use of the word “canceled,” which Ms. Knight insists created an inference that a policy had been issued, did not, in light of the undisputed facts in this case, create an inference that an insurance contract came into existence.
Based on the foregoing, we hold that the summary judgment was proper. Rule 56, Ala.R.Civ.P.
AFFIRMED.
HORNSBY, C.J., and SHORES, KENNEDY and INGRAM, JJ., concur.